UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

---

| | |
|---|---|
| Gretchen Hillenbrand and John Arlt, individually and on behalf of M.A. and T.A., as natural guardians, | CIV. 16-5007-KES |
| Plaintiff, | **Second Amended Complaint** |
| v. | |
| Wellmark of South Dakota, Inc., | |
| Defendants. | |

---

## Jurisdiction

1. Gretchen Hillenbrand ("Gretchen"), John Arlt ("John"), M.A. ("M.A.") and T.A. ("T.A."), collectively "Plaintiffs", are all residents of California.

2. Defendant, Wellmark of South Dakota, Inc. ("Wellmark") has an office in South Dakota.

3. The Court also has jurisdiction pursuant to 29 U.S.C. § 1132.

4. Venue is proper in the United States District Court of South Dakota.

## Background

5. Gretchen is an enrolled member of a Blue Select health plan for families and individuals operated by Wellmark.

6. Gretchen's husband, John, and her two children, M.A. and T.A., are on the same Blue Select family health plan operated by Wellmark.

7. Blue Select plans are designed to pay for hospital, medical, and surgical expenses incurred as a result of a covered illness or injury.

8. The health plan coverage is provided by the employer group Dakota Partnership DBA Triple Seven Ranch.

9. Gretchen is a 1/3 owner of Triple Seven Ranch.

10. The benefits plan is maintained by an employer and is subject to the Employee Retirement Income Security Act of 1974 ("ERISA").

11. Gretchen and her family suffer from a multitude of health conditions that require continued monitoring and regular treatment.

12. Before December of 2013, Wellmark consistently paid benefits for treatments by Gordon Medical Associates (Dr. Wayne Anderson and Dr. Eric Gordon), Dr. Elliot Blackman, and Dr. Suruchi Chandra from Whole Family Wellness Center.

13. On or about December of 2013, Wellmark began denying payment for the family's care, despite previously paying for the medical treatments and acknowledging the medically necessity of receiving those treatments.

14. The basis of most of the denials were due "to the lack of sufficient information to support necessity of billed services" or "the service is considered investigational or experimental . . ."

15. Gretchen and her family began appealing the denied benefits and providing Wellmark with documentation from the treating physicians that included an articulation of the medical necessity of the treatments and appropriate documentation of the care provided.

16. Despite the physician's recitation of the medical necessity of each treatment, Wellmark continued to deny benefits.

17. Since December of 2013, Gretchen and her family have appealed and received final decisions from Wellmark on 59 claims.

18. Wellmark continues to regularly deny benefits for medically necessary treatments.

19. The family has exhausted all of the internal appeal procedures under the plan policy.

## Gretchen

20. Gretchen suffers from three autoimmune diseases including: hypothyroidism (over 13 years), ulcerative colitis (16 years) and polychondoritis (over 4 years).

21. Gretchen was diagnosed in 2009 with Lyme disease.

22. Gretchen's conditions are not cured and are advancing. Therefore she requires constant and continuing monitoring to adjust her medications and care as necessary.

23. Gretchen receives treatment from multiple medical providers to help control her pain and manage her symptoms.

24. Gretchen has been a patient of Wayne Anderson ("Dr. Anderson"), a licensed naturopathic physician ("N.D.") from Gordon Medical Associates for six years.

25. Dr. Anderson treats Gretchen for her autoimmune diseases and Lyme disease.

26. Over the years, Gretchen has seen improvements in her conditions related to the treatment provided by Dr. Anderson.

27. Gretchen received Igenex Laboratory testing from Dr. Anderson on July 25, 2013.

28. Laboratory testing is covered by the Blue Select health plan.

29. These services were denied by Wellmark as investigational.

30. Gretchen appealed the decision.

31. Dr. Anderson sent a letter to Wellmark articulating the medical necessity of the testing.

32. In response, Wellmark Blue Cross and Blue Shield determined that "the laboratory testing is not medically necessary and benefits will not be allowed for these services."

33. Wellmark denied benefits for office visits to Dr. Anderson on November 14, 2013; December 30, 2013; January 27, 2014; and April 30, 2014 for "lack of sufficient information to support necessity of billed services."

34. Wellmark denied benefits for an office visit to Dr. Eric Gordon of Gordon Medical Associates on September 29, 2015 for "lack of sufficient information to support necessity of billed services."

35. Treatment for an illness or disease is covered by the Blue Select health plan.

36. Gretchen appealed the denial of benefits and provided a letter from Dr. Anderson articulating the medical necessity of the treatments and proper documentation.

37. In response, Wellmark concluded that the services rendered were investigational and therefor denied benefits.

38. Gretchen had an office visit to Dr. Anderson on April 28, 2014 which Wellmark denied because the "service was investigational or experimental."

39. Gretchen appealed.

40. Dr. Anderson sent a letter to Wellmark articulating the medical necessity of the treatment and proper documentation.

41. In response, Wellmark concluded that the service was investigational and denied benefits.

42. Gretchen sees Elliot S. Blackman, D.O. ("Dr. Blackman") for osteopathic manipulative treatments to help relieve Gretchen's inflammation caused by her chronic conditions.

43. It is medically necessary for Gretchen to treat with Dr. Blackman.

44. Musculoskeletal Treatments are covered by the Blue Select health plan.

45. Benefits were denied by Wellmark for services rendered by Dr. Blackman on August 20, 2013; August 28, 2013; September 10, 2013; September 25, 2013; October 8, 2013; October 30, 2013; November 18, 2013; December 11, 2013; and January 19, 2015 thru January 27, 2015; February 10, 2015; May 4, 2015 thru May 12, 2015; May 19, 2015 thru May 26, 2015 for "lack of sufficient information to support necessity of billed services."

46. Benefits were denied by Wellmark service rendered by Dr. Blackman on April 14, 2015 for the "service as submitted is not covered by your benefit plan."

47. Dr. Blackman prepared a letter articulating the medical necessity of the services rendered and provided appropriate documentation.

48. In response, Wellmark concluded that the services billed were not medically necessary and denied benefits.

49. Dr. Chandra also treats Gretchen for her autoimmune diseases.

50. Dr. Chandra believes it is medically necessary to see Gretchen consistently because the symptoms for her conditions fluctuate greatly.

51. Benefits were denied by Wellmark for services rendered by Dr. Chandra on June 25, 2014 and January 29, 2014 for "lack of sufficient information to support necessity of billed services."

52. Treatment for an illness or disease is covered by the Blue Select health plan.

53. Dr. Chandra prepared a letter articulating the medical necessity of the services rendered and provided appropriate documentation.

54. In response, Wellmark concluded that the services rendered were investigational and denied benefits.

## John

55. At age 35, John was diagnosed with Reiter syndrome, a type of reactive arthritis that occurs as a reaction to a bacterial infection in the body.

56. John was diagnosed with Lyme disease in 2010.

57. John suffers from debilitating pain that can render him unable to walk or perform daily activities.

58. John requires regular testing and monitoring to appropriately treat his conditions and fluctuating symptoms.

59. Dr. Blackman treats John with osteopathic manipulation for soft tissue inflammation, tinnitus, hearing loss, pain resulting from undiagnosed long term Lyme disease, reactive arthritis, along with acute conditions such as GI tract issues and localized pain.

60. The osteopathic manipulative treatments relieve John from pain and discomfort associated with inflammation.

61. Benefits were denied by Wellmark for services rendered by Dr. Blackman on July 23, 2013; August 28, 2013; September 9, 2013; December 9, 2014; and March 19 thru March 24 of 2014 for "lack of sufficient information to support necessity of billed services."

62. Musculoskeletal Treatments are covered by the Blue Select health plan.

63. Dr. Blackman prepared a letter articulating the medical necessity of the services rendered.

64. In response, Wellmark concluded that the services billed from July 23 to September 9, 2013 were not medically necessary and the services

billed from March 19 to December 9, 2014 had insufficient documentation to support any level of billing.

65. Dr. Chandra from Whole Family Wellness treats John for his inflammation and pain resulting from previously undiagnosed Lyme disease and reactive arthritis.

66. John has experienced relief from his painful conditions from regular treatments with Dr. Chandra.

67. Benefits were denied by Wellmark for services rendered by Dr. Chandra April 16, 2014 for "lack of sufficient information to support necessity of billed services."

68. Treatment for an illness or disease is covered by the Blue Select health plan.

69. Dr. Chandra prepared a letter articulating the medical necessity of the services rendered and provided appropriate documentation.

70. In response, Wellmark concluded that the services rendered were investigational and denied benefits.

71. Dr. Anderson from Gordon Medical Associates treats John for his soft tissue inflammation and pain resulting from a previously undiagnosed long term Lyme disease and reactive arthritis.

72. John received Igenex Laboratory testing from Dr. Anderson on September 3, 2013.

73. Laboratory testing is covered by the Blue Select health plan.

74. Wellmark denied benefits for the laboratory testing, concluding that the labs were investigational or experimental.

75. John appealed the decision and provided a letter from Dr. Anderson articulating the medical necessity of the testing.

76. In response, Wellmark concluded that "the laboratory testing is not medically necessary and benefits will not be allowed for these services."

77. Wellmark denied benefits for office visits to Dr. Anderson on March 22, 2013; December 30, 2013 and January 27, 2014 for "lack of sufficient information to support necessity of billed services."

78. Treatment for an illness or disease is covered by the Blue Select health plan.

79. John appealed the denial of benefits and provided a letter from Dr. Anderson articulating the medical necessity of the treatments and proper documentation.

80. In response, Wellmark concluded that the services rendered were investigational and therefor denied benefits.

## M.A.

81. M.A. was born in 2002.

82. M.A. was diagnosed with Lyme disease in fall of 2011.

83. M.A. has cognitive and memory imbalance.

84. M.A. suffers from stomach pain, leg discomfort, moodiness and sensitivity.

85. M.A. has difficulty attending school because of lack of energy and cognitive imbalance.

86. Dr. Gordon helps M.A. manage and treat her symptoms associated with her Lyme disease diagnosis.

87. Dr. Gordon ordered laboratory testing for M.A. at Fry Laboratories, LLC which were completed on July 25, 2013.

88. Laboratory testing is covered by the Blue Select health plan.

89. The laboratory benefits were denied for "lack of sufficient information to support necessity of billed services."

90. Gretchen appealed on behalf of M.A., including a letter from Dr. Gordon explaining the medical necessity of the labs.

91. In response, Wellmark concluded that the laboratories were investigational and denied benefits.

92. Dr. Anderson treats M.A. for her Lyme disease and symptoms associated with the past treatment for Lyme disease and symptoms associated with her cognitive and memory imbalance.

93. Dr. Anderson has M.A. on a treatment plan, and regularly monitors and adjusts her medications and supplements to achieve the desired medical outcome.

94. M.A. has experienced relief from her painful conditions through regular adjustments to her treatment plan with Dr. Anderson.

95. Benefits were denied by Wellmark for services rendered by Dr. Anderson on October 16, 2013, November 14, 2013, January 27, 2014, April 28, 2014, for "lack of sufficient information to support necessity of billed services."

96. Treatment for an illness or disease is covered by the Blue Select health plan.

97. Dr. Anderson articulated the medical necessity of the services rendered and provided appropriate documentation.

98. In response, Wellmark concluded that the services rendered on October 16, 2013; November 14, 2013; January 27, 2014; and April 28, 2014 rendered were investigational.

99. Dr. Blackman regularly performs osteopathic manipulative treatments on M.A. to relieve her from pain and discomfort caused by her chronic and acute conditions.

100. Musculoskeletal Treatments are covered by the Blue Select health plan.

101. Benefits were denied by Wellmark for services rendered by Dr. Blackman on July 23, 2013, September 2, 2013, September 11, 2013, September 26, 2013, October 9, 2013 and January 20, 2014 for "lack of sufficient information to support necessity of billed services."

102. Dr. Blackman prepared a letter articulating the medical necessity of the services rendered.

103. In response, Wellmark concluded that the services billed were not medically necessary.

104. Dr. Chandra treats M.A. for her Lyme disease, fatigue and stomach pains.

105. Dr. Chandra has to regularly monitor M.A.'s condition and modify her treatment plan to assist in the treatment of M.A.'s conditions.

106. Benefits were denied by Wellmark for services rendered by Dr. Chandra on March 10, 2014 and June 30, 2014 for "lack of sufficient information to support necessity of billed services."

107. Treatment for an illness or disease is covered by the Blue Select health plan.

108. Dr. Chandra prepared a letter articulating the medical necessity of the services rendered and documentation.

109. In response, Wellmark concluded that the services provided were investigational and denied benefits.

### T.A.

110. T.A. was born in 2004.

111. T.A. was diagnosed with Lyme disease in 2011.

112. T.A. suffers from abdominal pain, chronic fatigue, symptoms associated with Lyme disease, and porphyria.

113. Porphyria can cause significant problems including chronic kidney failure and liver damage.

114. Porphyria affects the nervous system, skin and other organs.

115. There is no cure for porphyria.

116. Dr. Gordon provides treatment and management of T.A.'s conditions.

117. Benefits were denied by Wellmark for services rendered by Gordon Medical Associates on May 29, 2013, October 1, 2013 and October 16, 2013 for "lack of sufficient information to support necessity of billed services."

118. Treatment for an illness or disease is covered by the Blue Select health plan.

119. Dr. Gordon and Dr. Anderson both prepared a letter articulating the medical necessity of the services rendered and proper documentation.

120. In response, Wellmark concluded that the treatments provided were investigational or experimental.

121. Dr. Anderson treats T.A. for her recurrent abdominal pain, chronic fatigue and active Lyme disease.

122. T.A. has experienced relief from her painful conditions through regular adjustments to her treatment plan with Dr. Anderson.

123. Benefits were denied by Wellmark for services provided by Dr. Anderson on November 14, 2013, January 27, 2014 and April 28, 2014 for "lack of sufficient information to support necessity of billed services."

124. Treatment for an illness or disease is covered by the Blue Select health plan.

125. Dr. Anderson prepared a letter articulating the medical necessity of the services rendered and documentation.

126. In response, Wellmark determined that the services rendered were investigational and denied payment.

127. Benefits were denied by Wellmark for services provided by Dr. Anderson on November 14 thru December 30, 2013 for being considered "investigational or experimental."

128. Dr. Anderson prepared a letter articulating the medical necessity of the services rendered and documentation.

129. In response, Wellmark determined that the services rendered were investigational and denied payment.

130. Dr. Blackman treats T.A. for her chronic and acute conditions by performing osteopathic manipulative treatments.

131. Due to her fluctuating inflammation and symptoms associate with her inflammation, Dr. Blackman must adjust her regularly.

132. Benefits were denied by Wellmark for services provided by Dr. Blackman July 23, 2013, August 27, 2013, September 30, 2013, October 8, 2013, October 29, 2013, November 12, 2013, December 2, 2013, December 23, 2013 for "lack of sufficient information to support necessity of billed services."

133. Musculoskeletal Treatments are covered by the Blue Select health plan.

134. Dr. Blackman prepared a letter articulating the medical necessity of the services rendered and documentation.

135. In response, Wellmark determined that the services rendered were not medically necessary and denied benefits.

136. Dr. Chandra treats T.A. for her abdominal pain, chronic fatigue and elevated urine porphyrins.

137. Dr. Chandra has to regularly monitor T.A.'s condition and modify her treatment plan to assist in the treatment of T.A.'s conditions.

138. T.A. has experienced relief from regular treatments with Dr. Chandra.

139. Benefits were denied by Wellmark for services provided by Dr. Chandra on June 30, 2014 and September 24, 2015 for "lack of sufficient information to support necessity of billed services."

140. Dr. Chandra prepared a letter articulating the medical necessity of the services rendered and documentation.

141. In response, Wellmark determined that the services rendered on June 30, 2014 were investigational and the services rendered on September 24, 2015 were not medically necessary, and therefore denied benefits.

## Count I
### Defendant Wrongfully Denied Benefits in Violation of 29 U.S.C.A. § 1132(a)(1)(B)

142. Plaintiffs restate and reallege the allegations set forth in the paragraphs above as though fully set forth herein and further states and alleges as follows:

143. Plaintiffs properly made claims for benefits associated with the care and treatment from providers previously approved by the plan.

144. After each benefit denial, Plaintiffs provided Defendant the physician's opinion of the medical necessity of the services rendered and appropriate documentation.

145. Defendant failed to consider the opinion of the physicians and improperly interpreted the terms of the plan.

146. Defendants wrongfully denied benefits to Plaintiffs.

147. Plaintiffs have exhausted all of the plan's administrative appeals process.

148. Plaintiffs are entitled to all the benefits provided herein.

149. Defendants wrongfully denied benefits.

## Count II
### Defendant Engaged in Improper Claim Handling in violation of 29 U.S.C.A. § 1132(a)(1)(B)

150. Defendant wrongfully denied benefits owing to Plaintiffs despite previously paying for the same services provided to the Plaintiffs.

151. Defendant wrongfully denied benefits owing to Plaintiffs despite having documentation from physicians that the services rendered were medically necessary before Plaintiffs obtained the services.

152. Defendants regularly and consistently denied benefits that were owing to the Plaintiffs.

153. Plaintiffs were required to appeal benefit denials despite Defendants having all the documentation and information they needed to pay the benefits owing.

154. Plaintiffs have exhausted all of the plan's administrative appeals process.

**WHEREFORE, Plaintiffs seek the following from the Court:**

1. Remand Plaintiffs' claims to the plan administrator with instructions to make a proper review of a claim following the appropriate procedures;

2. Recover benefits due to the Plaintiffs under the terms of the plan;

3. Enforce Plaintiffs' rights under the terms of the plan;

4. Clarify Plaintiffs' rights to future benefits under the terms of the plan;

5. Plaintiffs' attorney's fees and costs; and

6. Such other relief as is just and equitable.

Dated this 3rd day of August 2016.

                          BANGS, McCULLEN, BUTLER,
                          FOYE & SIMMONS, L.L.P

                          By: */s/ Terry G. Westergaard*
                              Terry G. Westergaard
                                twestergaard@bangsmccullen.com
                              Daniel F. Duffy
                                dduffy@bangsmccullen.com
                              Kelsey B. Parker
                                kparker@bangsmccullen.com
                              PO Box 2670
                              Rapid City, SD 57709
                              (605) 343-1040

                          ATTORNEYS FOR PLAINTIFFS