UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| GRETCHEN HILLENBRAND and JOHN ARLT, INDIVIDUALLY and on behalf of M.A. AND T.A., as natural guardians,<br><br>Plaintiff,<br><br>vs.<br><br>WELLMARK OF SOUTH DAKOTA, INC.,<br><br>Defendant. | Civ. No. 16-5007-KES<br><br>**Wellmark's Response to Plaintiffs' Statement of Facts in Support of Summary and Wellmark's Additional Statement of Facts** |

Local Rule 56.1 states that a party moving for summary judgment must file a "statement of the material facts as to which the moving party contends there is no genuine issue to be tried," and the opposing party must submit a statement of "material facts on which there exists a genuine material issue to be tried." That requirement does not fit well with an ERISA case, which is not "tried" but is instead submitted to the Court, based upon the administrative record and decided under a substantial evidence standard. *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 583 (8th Cir.2008). For that reason, Plaintiffs' statement and Wellmark's response do not have the same significance that they would have in a normal case, but they are helpful in summarizing the administrative record and providing citations to the Court.

With that in mind, Wellmark has responded to Plaintiffs' statements and, in some cases, provided additional information. Nevertheless, because the case is reviewed for substantial evidence in relation to the entire record, Wellmark is not conceding that the Court's review can or should be contained to the facts listed here. The record in this case, like the record in a trial or an appeal from agency action, must be considered in its entirety and Wellmark's decisions must

be upheld so long as they are supported by substantial evidence—which is "more than a scintilla but less than a preponderance." *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 583 (8th Cir.2008).

### Wellmark's Responses

1.      Gretchen Hillenbrand is an enrolled member of a Blue Select, BlueRX Preferred Plan ("Plan") operated by Wellmark. Administrative Record ("AR"): 633.

**RESPONSE:** Admit.

2.      John Arlt ("John"), M.A. ("M.A.") and T.A. ("T.A.") are also covered under the Plan. AR: 633, 1994, 3244, 4126.

**RESPONSE:** Admit.

3.      Defendant, Wellmark of South Dakota, Inc. ("Wellmark"), is an independent licensee of the Blue Cross and Blue Shield Association. *Id*. at 633.

**RESPONSE:** Admit.

4.      Plan coverage is provided by the employer group Dakota Partnership DBA Triple Seven Ranch. *Id*.

**RESPONSE:** Admit.

5.      The benefits covered by the Plan are provided in the Blue Select, BlueRx Preferred Coverage Manual ("Manual"). *Id*. at 89-181

**RESPONSE:** Admit.

6.      The benefits plan is maintained by an employer and is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id*. at 167.

**RESPONSE:** Admit.

7.    Gretchen suffers from three autoimmune diseases including: hypothyroidism, ulcerative colitis and polychrondritis. *Id*. at 15.

**RESPONSE:** Admit.

8.    Gretchen also suffers from symptoms associated with Lyme disease. *Id*.

**RESPONSE:** Admit.

9.    John suffers from Reiter syndrome, a type of reactive arthritis, and Lyme disease. AR: 2158, 2365.

**RESPONSE:**   Admit that on pages 2158 and 2365 a letter discusses that John has reactive arthritis, but deny that the letter states John suffers from Reiter syndrome.

10.    M.A. and T.A. have both been diagnosed with Lyme disease. AR: 3965, 4133.

**RESPONSE:** Admit.

11.    The family receives osteopathic manipulative treatments from Elliott S. Blackman, DO ("Dr. Blackman) to help relieve them from symptoms associated with their medical conditions. *Id*. at 231, 2787, 3246, 4354.

**RESPONSE:**   Admit that Dr. Blackman treats Plaintiffs with osteopathic manipulation treatments and that Dr. Blackman claims, in the cited letters, that the treatments provide relief to Plaintiffs for their various conditions.

12.    The family receives treatment from Dr. Suruchi Chandra from Whole Family Wellness/ Whole Child Wellness. *Id*. at 798, 3666, 5326, 6575.

**RESPONSE:** Admit.

13.    The family receives regular monitoring and treatment from Wayne Anderson ("Dr. Anderson"), a licensed naturopathic physician, and Dr. Eric Gordon from Gordon Medical Associates. AR: 441, 1978, 3444, 4134, 4133.

**RESPONSE:** Admit.

14.     On or about July 23, 2013, Wellmark began denying benefits to the providers described above. *See* Supplemental Administrative Record: 1-42.

**RESPONSE:** Admit.

The following includes a brief summary of the 26 appeals Gretchen filed on behalf of herself and her family:

### Gretchen Hillenbrand

### July 25, 2013: Appeal 59389

15.     Gretchen received Igenex Laboratory testing from Dr. Anderson on July 25, 2013. AR: Pg. 2.

**RESPONSE:** Admit.

16.     Laboratory testing is covered service under the Plan. *Id.* at 102, 117.

**RESPONSE:** Admit in part and clarify: laboratory testing is listed among the services that are "covered" under the plan, but "all covered services or supplies listed" in the relevant section of the Plan "are subject to the general contract provisions and limitations" described therein (AR 105), including the requirement that the service be medically necessary (AR 123) and not investigational or experimental. AR 124.

17.     The laboratory testing was denied by Wellmark as "investigational or experimental" on February 28, 2014. *Id.* at 42.

**RESPONSE:** Admit, though the citation to AR 42 is incorrect. *See* AR 48.

18.     The basis for the denial was the opinion of medical director Bill Jagiello ("Dr. Jagiello"). *Id.* at 48.

**RESPONSE:** Admit.

19.     Dr. Jagiello concluded that the claim should be denied as investigational. *Id.*

**RESPONSE:** Admit.

20.     Dr. Jagiello's rationale, in whole, was:

The United States Centers for Disease Control and Prevention (CDC) and the United States Food and Drug Administration (FDA) have cautioned clinicians that some commercial laboratories are performing assays for Lyme disease whose accuracy and clinical usefulness have not been adequately established [40]. These tests include urine antigen tests [41], immunofluorescent staining for cell wall-deficient forms of B. burgdorferi, lymphocyte transformation tests, and polymerase chain reaction (PCR) on inappropriate specimens such as blood and urine. (Source: UpToDate).

*Id.*

**RESPONSE:** Admit.

21.    Gretchen appealed the denial. *Id.* at 14.

**RESPONSE:** Admit.

22.    Dr. Anderson submitted a letter to Wellmark, describing the medical necessity of the Igenex testing. *Id.* at 15.

**RESPONSE:** Admit in part and deny in part. Dr. Anderson submitted the cited letter and stated that the tests were medically necessary.  Wellmark denies that the tests were medically necessary. *See* AR 3-12 and Plaintiffs' SOF ¶ 23.

23.    On June 9, 2014, Dr. Jim Gutshall, on behalf of the Medical Review Institute of America, Inc., upheld the denial and concluded that the lab testing was not medically necessary. He claimed, "Long term Lyme disease is not an accepted clinical syndrome. Further testing to aid in its management is not supported by current medical opinion and current standards." *Id.* at 3-12.

**RESPONSE:** Admit in part and deny in part.  The external reviewer, Medical Review Institute of America, Inc. (MRIoA) found that the lab testing was not medically necessary. Those findings were then reviewed by Dr. Jim Gutshall at Wellmark and the claim denial was upheld. Dr. Gutshall does not work for and did not making in findings "on behalf of" MRIoA.

24.    On June 25, 2014, Wellmark denied benefits because the laboratory testing was not medically necessary. *Id.* at 31-32.

**RESPONSE:** Admit.

25.    The amount billed was $660.00. *Id.* at 31.

**RESPONSE:** Admit.

26.     Igenex Laboratory Services were previously paid by Wellmark. Supplemental Administrative Record ("SAR"): 1, 4, 7, 21.

**RESPONSE:** Admit.

**August 20, 2013 – December 11, 2013: Appeal 60892**

27.     Gretchen received osteopathic manipulative treatments from Dr. Blackman between August 20, 2013 and December 11, 2013.  AR: Pg. 229-30.

**RESPONSE:** Admit.

28.     Dr. Jagiello denied benefits for the following reasons: the "[r]ecords provided do not support EM level of service billed", "[r]ecords do not support number of body regions treated with OMT", and "ICD 9 codes submitted are not supported in the medical record". *Id.* at 263.

**RESPONSE:** Admit.

29.     The basis for the denial was, "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed services." *Id.* at 287-88.

**RESPONSE:** Admit.

30.     Gretchen appealed the denial on September 5, 2014. *Id.* at 200.

**RESPONSE:** Admit.

31.     Dr. Blackman prepared a letter articulating the medical necessity of the services rendered. Dr. Blackman wrote,

> As part of the treatment plan and pain management, I see Ms. Hillenbrand on a regular basis to perform osteopathic manipulative treatment. This treatment provides relief from the inflamed state that result from Ms. Hillenbrand's chronic conditions. The inflammatory condition changes frequently, which requires the medically necessary regular office visits. Please contact me if I can be of further assistance.

> *Id.* at 231.

**RESPONSE:**   Admit in part and deny in part.   The letter is accurately quoted but Wellmark disputes that the treatments were medically necessary. *See* AR 185-98.  Among other things, the medical documentation did not designate the number of body regions treated by osteopathic manipulation (AR 187), many of the provider's notes were illegible, many of them were not signed by the provider, and none of them had a clear physical exam or a legible assessment with a plan of care documented.  AR 188. *See also* AR 195-97.  The medical **records** at are at AR 232-36.

32.   On September 22, 2014, Dr. Tim Gutshall, from the Medical Review Institute of America, Inc., concluded that the documentation "does not support the level of services billed. Based on the notes sent for review, no charges should be billed.  There are no legible notes with a clear history, no legible physical exam findings and no clear/legible assessment with treatment plan.  Also, medical records from December 2013 have not been received, therefore these services will be denied because of lack of documentation of medical necessity." *Id.* at 185-198.

**RESPONSE:**   Admit in part and deny in part. Dr. Gutshall is not from the Medical Review Institute of America (MRIoA).  Rather, he is a Wellmark employee who was reviewing the findings of MRIoA.   The quotes are from findings of MRIoA, and Dr. Gutshall reviewed those findings.

33.   In a letter dated October 7, 2014, Wellmark concluded that the services billed were not medically necessary and denied benefits. *Id.* at 229.

**RESPONSE:**  Admit.

34.   The amount billed was "multiple." *Id.* at 229-30.

**RESPONSE:**  Deny that the "amount" was multiple, though admit that the letter states that there were multiple billed amounts.

35.   Wellmark regularly paid for osteopathic manipulative treatments from Dr. Blackman.  SAR: 13, 14, 15, 16, 17, 18, 19, 20, 21.

**RESPONSE:** Admit that Wellmark has, in the past, paid certain claims for osteopathic manipulative treatments from Dr. Blackman.

**October 16, 2013 – January 27, 2014: Appeal 61153**

36.     Gretchen received treatments at Gordon Medical Associates on October 16, November 14, and December 30 of 2013, and January 27 of 2014.  AR: Pg. 411-12.

**RESPONSE:** Admit.  The medical records are at AR 413-434.

37.     Dr. Jagiello denied services because the records do not support services billed and the treatment was not provided in accordance with generally accepted standards of medical practice.  *Id.* at 448-49.

**RESPONSE:** Admit, but further state that Dr. Jagiello wrote that the records were difficult to read and did not follow the standardized SOAP format for collecting history and treatment, and that notes regarding the physical examination were "completely absent."  AR 448.

38.     Dr. Anshul denied services for January 22, 2014 because the "diagnosis provided does not correspond to generally accepted standards of medical practice."  *Id.* at 472-73.

**RESPONSE:**  Admit and further state that Dr. Anshul also provided that the records did not support the level of EM service billed.  The documentation was also missing at least 2 of the 3 components: 1) comprehensive history; comprehensive examination and medical decision making of high complexity.  AR 472.

39.     Wellmark denied benefits.  "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed services."  *Id.* at 488, 494, 502, 510, 520.

**RESPONSE:**  Admit.

40.     Gretchen appealed and provided a letter from Dr. Anderson.  *Id.* at 439-441.

**RESPONSE:**  Admit.

41.     The letter provided:

"I am a physician treating Gretchen Hillenbrand for several autoimmune diseases: Hypothyroidism, Ulcerative Colitis and Polychrondritis.  In addition Ms. Hillenbrand continues to suffer from neurological pain in her face and legs resulting from long term Lyme disease.
. . .
As part of the treatment plan for Ms. Hillenbrand, I need to see her to monitor her conditions and adjust her medications and supplements. The treatment plan is adjusted on

a regular basis to achieve the desired medical outcome. For example, as her records indicate, she is also in need of close monitoring of her T3 levels as her needs for her thyroid medication are changing.

. . .

It is medically necessary to see Ms. Hillenbrand consistently because the symptoms from her conditions fluctuate greatly.

. . .

Based on Ms. Hillenbrand's past medical history, the regular adjustments to the treatment plan have provided relief from those painful outcomes."

*Id.* at 441.

**RESPONSE:** Admit.

42.     Dr. Gutshall, of the Medical Review Institute of America, Inc., concluded that the "requirements for documentation of the E&M codes were not met per AMA guidelines. Also the services are investigational. The services do need to have scientific literature permitting conclusions on net health outcome, have evidence that the intervenors improve net health outcome, and the interventions need to have evidence that they are as beneficial as established alternatives. . . . " *Id.* at 401-09.

**RESPONSE:** Admit that MRIoA made the quoted findings and that Dr. Gutshall reviewed those findings. Deny that Dr. Gutshall is with MRIoA (he is with Wellmark), but admit that he reviewed the MRIoA review in upholding the denial.

43.     On October 21, 2014, Wellmark denied benefits because the services were investigational and the billing failed to comply with E&M codes per AMA guidelines. *Id.* at 411-12.

**RESPONSE:** Admit.

44.     The billed charges were $360.00, $950.00, and $600.00. *Id.* at 496.

**RESPONSE:** Admit.

45.     Wellmark previously paid benefits to Gordon 3964

**RESPONSE:** It appears that paragraph 45 continues on into paragraph 46.

46.     Medical Associates. SAR: 1, 2, 3, 4, 7, 12, 17, 18, 19, 20, 22.

**RESPONSE:**  Admit that Wellmark had covered claims for services provided by Gordon Medical Associates.  Deny that Wellmark paid benefits "to Gordon Medical Associates."  The record does not support that statement.

### April 30, 2014: Appeal 62931

47.     Gretchen received treatment from Dr. Anderson on April 28 of 2014.  AR: Pg. 633.

**RESPONSE:** Admit. *See also* 635-644 for the medical records for the date of service.

48.     Benefits were denied by Wellmark because "Additional medical information is required to process this claim, and has been requested from the appropriate provider.  This claim denial may be reconsidered once we have received the requested information."  *Id*. at 666-70.

**RESPONSE:** Admit.

49.     On February 2, 2015, Gretchen appealed the denial of benefits. *Id*. at 649.

**RESPONSE:** Admit.

50.     Dr. Anderson  submitted  a  letter  to  Wellmark  detailing  the  medically  [sic] necessity of the treatment provided.  *Id*. at 645, 664.

**RESPONSE:**  Admit in part and deny in part. Dr. Anderson submitted a letter, but Wellmark denies that the treatment was medically necessary.  *See* SOF 52, citing 675-80.

51.     Despite the denial language in the Explanation of Benefits, the "Clinical Appeal Worksheet" indicated that no additional records or information were requested to review the appeal.  *Id*. at 676, 683.

**RESPONSE:** Admit.

52.     Tim Gutshall, of the Medical Review Institute of America, Inc., (again) concluded that the "requirements for documentation of the E&M codes were not met per AMA guidelines. Also the services are investigational.  The services do need to have scientific literature permitting

conclusions on net health outcome, have evidence that the intervenors improve net health outcome, and the interventions need to have evidence that they are as beneficial as established alternatives. . . " *Id.* at 675-80.

**RESPONSE:** As explained above, the findings were made by the external reviewer, MRIoA, and then reviewed by Dr. Gutshall of Wellmark. Dr. Gutshall is not with MRIofA. The statement is therefore admitted, with that clarification.

53.     On February 24, 2015, Wellmark denied benefits because the services were investigational and the billing failed to comply with E&M codes per AMA guidelines. *Id.* at 633-34.

**RESPONSE:** Admit.

54.     The billed charge was $360.00. *Id.* at 633, 682.

**RESPONSE:** Admit.

55.     Wellmark previously paid benefits to Gordon Medical Associates. SAR: 1, 2, 3, 4, 7, 12, 17, 18, 19, 20, 22.

**RESPONSE:** Admit that Wellmark had covered claims for services provided by **Gordon** Medical Associates. Deny that Wellmark paid benefits "to Gordon Medical Associates." The record does not support that statement.

**June 25, 2014: Appeal 63570**

56.     Gretchen received treatment from Dr. Chandra on June 25, 2014. AR: Pg. 798.

**RESPONSE:** Admit. *See also* AR 801-80, which are the medical records for the date of service.

57.     Wellmark denied benefits. The denial stated, "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed services." *Id.* at 934-936.

**RESPONSE:** Admit.

58.    On March 11, 2015, Gretchen appealed the denial of benefits and provided a letter from Dr. Chandra. *Id.* at 803, 921, 931, 932.

**RESPONSE:** Admit.

59.    In the letter, Dr. Chandra detailed Gretchen's health issues and the need to consistently monitor Gretchen's symptoms while on Dr. Chandra's treatment plan. *Id.* at 803.

**RESPONSE:** Admit that Dr. Chandra submitted a letter and that Plaintiffs' statement accurately characterizes the contents of it.

60.    Dr. Chandra sent Wellmark Gretchen's complete chart for Wellmark's review and consideration, twice. *Id.* at 945.

**RESPONSE:** Admit.

61.    However, the "Clinical Appeal Worksheet" provides, "they had no documentation." *Id.* at 938.

**RESPONSE:** Admit with clarification. The cited document states that "they"—referring to Wellmark's SIU unit—"had no documentation" but it goes on to state that "the med records under Med/Therapy Document bookmark *were found* in B2," and thus Wellmark asked Dr. Gutshall, to review the claim denial *based on the attached documentation*"—i.e., the records that Dr.Chandra had sent. AR 938 (emphasis added). So to the extent that Plaintiffs are insinuating that Wellmark's final determination was made without reviewing the medical records, that is wrong and Wellmark denies as much.

62.    Additional records and information were not requested from Gretchen or her provider. *Id.* at 939.

**RESPONSE:** Admit, with the clarification that Wellmark did review the medical records **that** Dr. Chandra had sent. AR 938.

63.    The "Clinical Appeal Worksheet" was largely left blank. However, Dr. Gutshall again concluded that the "requirements for documentation of the E&M codes were not met per AMA guidelines. Also the services are investigational. The services do need to have scientific literature permitting conclusions on net health outcome, have evidence that the intervenors

improve net health outcome, and the interventions need to have evidence that they are as beneficial as established alternatives. . . . " *Id.* at 938-943.

**RESPONSE:** Deny the characterization that the worksheet (AR 938-43) was "largely left blank." Admit that the worksheet is accurately quoted.

64. On March 31, 2015, Wellmark denied benefits because the services were investigational and the billing failed to comply with E&M codes per AMA guidelines. *Id.* at 798-800.

**RESPONSE:** Admit.

65. The billed charge was $320.00. *Id.* at 798.

**RESPONSE:** Admit.

66. Wellmark regularly paid for services to Whole Child Wellness until March 10, 2014. SAR: 22, 23, 25.

**RESPONSE:** Admit that Wellmark paid some claims from Whole Child Wellness before March 10, 2014.

### January 29, 2014: Appeal 64160

67. Gretchen received treatments from Dr. Chandra on January 29, 2014. AR: Pg. 1191.

**RESPONSE:** Admit. The medical records are at AR1199-1200.

68. On October 31, 2014, Dr. Jagiello denied benefits for January 29, 2014 and two other dates not subject to the appeal (March 10, 2014 and May 5, 2014). *Id.* at 1273.

**RESPONSE:** Admit.

69. Dr. Jagiello's rationale was "none of the records are populated with the type of information that would be consistent with standard SOAP documentation i.e. history of chief

complaint, physical examination, or documentation of time spent with patient for counseling or coordination of care." *Id.* at 1273-75.

**RESPONSE:** Admit.

70.     Wellmark denied benefits. "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed services." *Id.* at 1260-62, 1333.

**RESPONSE:** Admit.

71.     On April 20, 2015, Gretchen appealed the denial of benefits. *Id.* at 1248.

**RESPONSE:** Admit, and further state that the only date of service noted is January 29, 2014. AR 1248.

72.     Additional records and information were not requested of Gretchen or her provider. *Id.* at 1265.

**RESPONSE:** Deny. Plaintiffs cite to a notation on the April 27, 2015 clinical-appeal worksheet, which states that no additional records had been requested for the appeal. AR 1264-65. Wellmark had, however, made several requests for additional records. Through Anthem, the Blue Cross and Blue Shield licensee in California (where Gretchen was receiving services), Wellmark had made as many as five requests for additional medical records. *See* AR 1277 (fifth request).

73.     Again, the "Clinical Appeal Worksheet" was largely left blank. However, Dr. Gutshall (again) concluded that the "requirements for documentation of the evaluation and management codes were not met per AMA guidelines. Also the services are investigational. The services do need to have scientific literature permitting conclusions on net health outcome, have evidence that the intervenors improve net health outcome, and the interventions need to have evidence that they are as beneficial as established alternatives. . . . " *Id.* at 1264-70.

**RESPONSE:** Deny that the worksheet was "largely left blank" but admit that the worksheet is accurately quoted.

74.    On April 29, 2015, Wellmark denied benefits because the services were investigational and the billing failed to comply with E&M codes per AMA guidelines. *Id.* at 1191-1193.

**RESPONSE:** Admit.

75.    Billed charges were $670.00. *Id.* at 1191.

**RESPONSE:** Admit.

76.    Wellmark regularly paid for services to Whole Child Wellness until March 10, 2014. SAR: 22, 23, 25.

**RESPONSE:** Admit that Wellmark paid some claims from Whole Child Wellness before March 10, 2014.

**April 28, 2014: Appeal 64992**

77.    Gretchen received treatment from Dr. Anderson at Gordon Medical Associates on April 28, 2014. AR: Pg. 1440.

**RESPONSE:** Admit. The medical records are at AR 1444-1453.

78.    Wellmark denied benefits. The denial stated, "The service is considered investigational or experimental according to Wellmark Medical Policy and is not a covered benefit." *Id.* at 1477-79.

**RESPONSE:** Admit.

79.    On April 20, 2015, Gretchen appealed the denial of benefits and provided a letter from Dr. Anderson detailing the medical necessity of the services rendered. *Id.* at 1461, 1464.

**RESPONSE:** Admit in part and deny in part. Gretchen submitted a letter from Dr. Anderson, dated April 20, 2015, with her June 10, 2015 appeal. AR 1461, 1464. Wellmark denies, though, that the services are medically necessary. *See* AR 1481-87.

80.    Again, Dr. Gutshall concluded that the "requirements for documentation of the E&M codes were not met per AMA guidelines. Also the services are investigational.   The services do need to have scientific literature permitting conclusions on net health outcome, have evidence that the intervenors improve net health outcome, and the interventions need to have evidence that they are as beneficial as established alternatives. . . . "  *Id*. at 1481-87.

**RESPONSE:** Admit.

81.    On July 2, 2015, Wellmark denied benefits because the services were investigational and the billing failed to comply with E&M codes per AMA guidelines.  *Id*. at 1440-42.

**RESPONSE:**  Admit.

82.    Billed charges were $360.00.  *Id*. at 1440.

**RESPONSE**: Admit.

83.    Wellmark previously paid benefits to Gordon Medical Associates. SAR: 1, 2, 3, 4, 7, 12, 17, 18, 19, 20, 22.

**RESPONSE:**  Deny that Wellmark "paid benefits *to* Gordon Medical Associates," but admit that Wellmark had previously paid for services received **from** Gordon Medical Associates.

**January 19, 2015; January 27, 2015; February 10, 2015: Appeal 66609[1].**

84.    Gretchen went to Dr. Blackman for treatments between January 19, 2015 and February 10, 2015.  AR: Pg. 1604.

**RESPONSE:** Admit. The medical records at are at AR 1606-1607.

85.    Dr. Jagiello denied benefits for treatments on January 19 and January 27 of 2015 because the information submitted did not support the billing charged.  However, there was no basis for denying treatment on February 10.  *Id*. at 1666-67.

---

[1] This appeal information is also found on pages 5616-5801; 5952-6135.

**RESPONSE:** Admit in part and deny in part. Wellmark initially denied the claim based upon Dr. Jagiello's decision. The rationale for the initial decision is stated at AR 1619: "Based upon the records provided, services are denied due to lack of sufficient information to support necessity of billed services."

86.     Wellmark's denial stated, "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed services." *Id.* at 1619.

**RESPONSE:** Admit.

87.     On October 2, 2015, Gretchen appealed the denial of benefits and provided a letter from Dr. Blackman. *Id.* at 1618, 1620.

**RESPONSE:**   Admit, and further state that Dr. Blackman's letter is the same letter submitted with all claim appeals related to his treatment.

88.     In his letter, Dr. Blackman explained that he regularly treats Gretchen with osteopathic manipulative treatments to give her relief from her inflamed state caused by Gretchen's chronic conditions. *Id.* at 1620.

**RESPONSE:**   Admit that is what the letter states.   Deny any insinuation that the treatment was medically necessary.

89.     Additional records and information were not requested of Gretchen or her provider. *Id.* at 1627.

**RESPONSE:**   Deny. Plaintiffs cite to a notation on the October 6, 2015 clinical-appeal worksheet, which states that no additional records had been requested for the appeal. AR 1626-27. Wellmark had, however, made several requests for additional records.  Through Anthem, the Blue Cross and Blue Shield licensee in California (where Gretchen was receiving services), Wellmark had made at least two requests for additional medical records. *See* AR 1645 (second request).

90.     Again, Dr. Gutshall upheld the denial of benefits. He wrote, "There is no clear osteopathic manipulative treatment (OMT) documented in the clinical records provided.   In addition, the notes lack any history of present illness, exam findings or assessment/plan to support the need for the evaluation and management (E&M) services.   As such, the

documentation does not support billing for either the OMT or the E&M codes for the dates of service." *Id.* at 1626-38.

**RESPONSE:** Admit.

91.    On October 29, 2015, Wellmark denied benefits for the reasons described by Dr. Gutshall. *Id.* at 1604-05.

**RESPONSE:** Admit.

92.    Billed charges were $780.00. *Id.* at 1604.

**RESPONSE:** Admit.

93.    Wellmark regularly paid for osteopathic manipulative treatments from Dr. Blackman.  SAR: 13, 14, 15, 16, 17, 18, 19, 20, 21.

**RESPONSE:**   Admit that Wellmark has, in the past, paid for certain osteopathic manipulation treatments from Dr. Blackman.

**September 29, 2015: Appeal 70411**

94.    Gretchen received treatment at Gordon Medical Associates on September 29, 2015. *Id.* at 5803-05.

**RESPONSE:** Admit. The medical records are at AR 5806-5811.

95.    Dr. Jagiello concluded that benefits should be denied because "Documentation does not support comprehensive history, comprehensive examination, or medical decision making of high complexity." *Id.* at 5836-37.

**RESPONSE:** Admit, but further state that in the rationale section it states the notes were handwritten and difficult to follow, and the time documented was sixty minutes with little detail on how the time was spent.

96.    Benefits were denied for the reason that, "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed services." *Id.* at 5824-5826.

**RESPONSE:** Admit.

97.    Gretchen appealed and attached a letter from Dr. Anderson detailing the medically necessity of the treatment.  *Id.* at 5815-16.

**RESPONSE:**  Admit, but state that the letter attached is a copy that has been submitted with several other appealed claims and does not note a date of service.

98.    Dr. Gutshall upheld the denial and concluded, "Based on the information provided, the documentation of the evaluation and management code was not met per AMA guidelines."  *Id.* at 5828-5832.

**RESPONSE:** Admit.

99.    Wellmark denied benefits.  *Id.* at 5803.

**RESPONSE:** Admit.

100.    Billed charges were $480.00.  *Id.* at 5742.

**RESPONSE:** Admit.

101.    Wellmark previously paid benefits to Gordon Medical Associates. SAR: 1, 2, 3, 4, 7, 12, 17, 18, 19, 20, 22.

**RESPONSE:**  Admit that Wellmark had covered claims for services provided by Gordon Medical Associates.  Deny that Wellmark paid benefits "to Gordon Medical Associates" The record does not support that statement.

**April 14, 2015 – September 30, 2015; Appeal 70409**

102.    Gretchen went to Dr. Blackman for treatments between April 14, 2015 and September 30, 2015.  AR: Pg. 6140.

**RESPONSE:** Admit. The medical records for dates of service April 14, 2015, May 5, 2015 and May 12, 2015 at are at AR 6192-6193.

103.    Dr. Jagiello denied benefits for treatment on April 14, 2015 because the "Records are sketchy and minimal" and not support the level of billing.  *Id.* at 6225.

**RESPONSE:** Admit, and further state that Dr. Jagiello lists the information that would be required to review the claims.

104.   Dr. Jagiello concluded that services provided on May 4, 2015 should be denied because the information submitted does not support the billing.  *Id.* at 6233.

**RESPONSE:** Admit that Dr. Jagiello denied the claim because the submitted medical records, which were "scant and difficult to read" and were not signed by the treating physician, and did not support the billed charges. AR 6233. The date of service is listed as May 5, 2015 rather than May 4, 2015.  AR 6233, 6194.

105.   Amy Goddard concluded that treatments provided on May 12, 2015; May 19, 2015; and May 25, 2015 were the same as those provided on May 4, 2015 so she denied benefits. She wrote, the "denials would have followed suit. . . ." *Id.* at 6220.

**RESPONSE:**  Admit, with the qualification that the date of service is listed as May 26, 2015, not May 25, 2015.

106.   Wellmark's denial stated, "This service is not covered by your benefit plan. Please refer to your benefits document for information on covered and noncovered services." *Id.* at 6160-69.

**RESPONSE:**  Admit and further note that some of the denials stated: "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed charges." AR 6164, 6167, 6169.

107.   Gretchen appealed the denial of benefits and provided a letter from Dr. Blackman. *Id.* at 6143, 6151-52, 6186-87.

**RESPONSE:** Admit.

108.   In his letter, Dr. Blackman explained that he regularly treats Gretchen with osteopathic manipulative treatments to give her relief from her inflamed state caused by Gretchen's chronic conditions. *Id.* at 6143, 6152, 6187.

**RESPONSE:**  Admit as the characterization of the letter and further state that Dr. Blackman's letter submitted with the May 5, 2016 appeal was dated September 20, 2014. AR 6151-52.

109.    Again, Dr. Gutshall upheld the denial of benefits. He wrote, "There is no clear osteopathic manipulative treatment (OMT) documented in the clinical records provided.  In addition, the notes lack any history of present illness, exam findings or assessment/plan to support the need for the evaluation and management (E&M) services.   As such, the documentation does not support billing for either the OMT or the E&M codes for the dates of service." *Id*. at 6171-83.

**RESPONSE:**   Admit, but further state that Anthem Blue Cross and Blue Shield, on behalf of Wellmark, made several request for additional records. *See e.g.,* AR 6191, 6195.

110.    Wellmark denied benefits. *Id*. at 6140-42.

**RESPONSE:** Admit.

111.    Billed charges were $250.00, $525.00, $525.00, and $500.00. *Id*. at 6140.

**RESPONSE:** Admit.

112.    Wellmark regularly paid for osteopathic manipulative treatments from Dr. Blackman. SAR: 13, 14, 15, 16, 17, 18, 19, 20, 21.

**RESPONSE:**   Admit that Wellmark has, in the past, paid for certain osteopathic manipulation treatments from Dr. Blackman.

### John Arlt

**September 3, 2013: Appeal 59388.**

113.    John received Igenex Laboratory testing from Dr. Anderson on September 3, 2013. AR: Pg. 1994-96

**RESPONSE:** Admit.

114.    Laboratory testing is covered by the Blue Select health plan. *Id*. at 2049, 2064.

**RESPONSE:**   Admit in part and clarify: laboratory testing is listed among the services that are "covered" under the plan, but "all covered services or supplies listed" in the relevant section of the Plan "are subject to the general contract provisions and limitations" described

therein (AR 105), including the requirement that the service be medically necessary (AR 123) and not investigational or experimental, AR 124.

115.    Dr. Jagiello denied benefits for the identical reason provided in Appeal No. *59389*.  He wrote:

> The United States Centers for Disease Control and Prevention (CDC) and the United States Food and Drug Administration (FDA) have cautioned clinicians that some commercial laboratories are performing assays for Lyme disease whose accuracy and clinical usefulness have not been adequately established [40].  These tests include urine antigen tests [41], immunofluorescent staining for cell wall-deficient forms of B. burgdorferi, lymphocyte transformation tests, and polymerase chain reaction (PCR) on inappropriate specimens such as blood and urine. (Source: UpToDate).

*Id.* at 2009-11, 48.

**RESPONSE:** Admit.

116.    Dr. Jagiello's rationale and decision were sent on February 25, 2014 at 2:21 p.m. in appeal 59389 and 59388.  *Id.* at 48, 2010.

**RESPONSE:** Admit.

117.    Wellmark denied the services as being investigational and/or experimental.  *Id.* at 2029.

**RESPONSE:** Admit.

118.    John appealed the denial and attached a letter from Dr. Anderson detailing the medical necessity of testing to treat and manage Mr. Arlt's conditions.  *Id.* at 1977-78.

**RESPONSE:** Admit in part and deny in part. John submitted a letter from Dr. Anderson. AR 1977-78. Wellmark denies, however, that the services were medically necessary. *See* AR 1967-75 (explaining why the services are not medically necessary).

119.    Dr. Gutshall, in identical reasoning to Appeal No. 59389, upheld the denial.  He concluded that the lab testing was not medically necessary.  Further, "Long term Lyme disease is

not an accepted clinical syndrome. Further testing to aid in its management is not supported by current medical opinion and current standards." *Id.* at 1967-75; 3-12.

**RESPONSE:** The quoted statement comes from the MRIoA external review, which Dr. Gutshall reviewed. AR 1967-75.

120. On June 25, 2014, Wellmark denied benefits because the laboratory testing was not medically necessary. *Id.* at 1994-96.

**RESPONSE:** Admit.

121. Billed charges were $668.00. *Id.* at 1994.

**RESPONSE:** Admit.

122. Igenex Laboratory Services were previously paid by Wellmark. SAR: 1, 4, 7, 21.

**RESPONSE:** Admit that Wellmark had paid some claims from Igenex Laboratory Services.

### July 23, 2013 – September 9, 2013: Appeal 60893

123. John received osteopathic manipulative treatments from Dr. Blackman on July 23, August 28 and September 9 of 2013. AR: 1814-15.

**RESPONSE:** Admit. The medical records are at AR 1851-1853.

124. An "SIU did not receive nor review the records for this patient and DOS." *Id.* at 1841.

**RESPONSE:** Admit, but further state that on September 18, 2014, Wellmark did request records. AR 1844.

125. Wellmark denied benefits. "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed services." *Id.* at 1854.

**RESPONSE:** Admit.

126.    John appealed and attached a letter from Dr. Blackman detailing John's debilitating pain and the medical necessity of receiving osteopathic manipulative treatments. *Id.* at 1799, 1800.

**RESPONSE:**  Admit that the letter is accurately summarized but deny that the services were medically necessary. See the paragraph 127 below.

127.    Dr. Gutshall concluded that "[t]he documentation by the servicing provider does not support the level of services billed.  In addition, there is a lack of office notes supporting the need for any treatment as there are no office notes with chief complaint, history of present illness, physical exam findings, or assessment and rationale for the treatment provided." *Id.* at 1786-98.

**RESPONSE:** Admit.

128.    On October 7, 2014, Wellmark denied benefits because the services were not medically necessary. *Id.* at 1814-15.

**RESPONSE:** Admit.

129.    Billed charge: $750.00. *Id.* at. 1814.

**RESPONSE:** Admit.

130.    Wellmark regularly paid for osteopathic manipulative treatments from Dr. Blackman.  SAR: 13, 14, 15, 16, 17, 18, 19, 20, 21.

**RESPONSE:**   Admit that Wellmark has, in the past, paid for certain osteopathic manipulation treatments from Dr. Blackman.

### March 22, 2013 – January 27, 2014: Appeal 61147[2]

131.    John received treatments at Gordon Medical Associates on March 22, 2013, December 30, 2013 and January 27, 2014.  AR: 2139, 6385.

_____

[2] Appeal also found at 6376 – 6569.

**RESPONSE:** Admit.

132.    Dr. Anshul Dixit, a medical director at Wellmark, recommended denying benefits for services on March 22 because the "[c]linical information submitted does not mention the type, amount, or duration over which a hydration solution was infused" and the "[i]nformation submitted does not speak to the specific intravenous injection that was used for therapeutic, prophylactic or diagnostic purposes." *Id.* at 2165-66; 6411-12.

**RESPONSE:** Admit.

133.    Dr. Jagiello concluded that the services provided on January 27, 2014 and December 30, 2013 should be denied because the "[r]ecords do not support services billed." *Id.* at 2167-68; 6413-14.

**RESPONSE:**   Admit, but state that in Dr. Jagiello's comments, he states: "Primary diagnosis for EM services is Lyme Disease and common Variable Immunodeficiency.  However notes and management with Rituxan suggest rheumatic disease such as Lupus.  AR 2167.

134.    The basis for the denial was "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed services." *Id.* at 2191, 2202, 2209, 2216; 6437, 6488, 6455, 6463.

**RESPONSE:**   Admit

135.    John appealed on September 22, 2014 and attached a letter from Dr. Anderson detailing the medical necessity of the services provided. *Id.* at 2157-58; 6403-04.

**RESPONSE:**   Admit in part and deny in part. John submitted a letter from Dr. Anderson. Wellmark denies, however, that the services are medically necessary. *See* AR 2131-37 (quoted in part immediately below).

136.    Dr. Gutshall concluded:

[T]he requirements for documentation of the E&M procedure codes were not met per AMA guidelines for visits in December 2013 and January 2014.  In addition, these visits are also investigational. Also, the services on 3/22/13 are investigational.  The services do need to have support from scientific literature permitting conclusions on net health

outcome, have evidence that the interventions improve net health outcome, and have evidence that the interventions are as beneficial as established alternatives. These requirements are not met.

*Id.* at 2131-37; 6377-83.

**RESPONSE:** Admit, and further state that at AR 2136-2137 each date is set out with the rationale for the denial.

137.    On March 31, 2015, Wellmark denied benefits for the services rendered by Dr. Anderson on March 22, 2013, December 30, 2013 and January 27, 2014. *Id.* at 2139-40; 6385-86.

**RESPONSE:**  Deny, as the letter is dated October 21, 2014.

138.    Billed charges were $218.00, $360.00, $575.00. *Id.* at 2196, 6431, 6442.

**RESPONSE:**  Admit.

139.    Wellmark previously paid benefits to Gordon Medical Associates. SAR: 1, 2, 3, 4, 7, 12, 17, 18, 19, 20, 22.

**RESPONSE:**    Admit that Wellmark had covered claims for services provided by Gordon Medical Associates. Deny that Wellmark paid benefits "to Gordon Medical Associates" The record does not support that statement.

**April 16, 2014: Appeal 63538**

140.    John received treatment from Dr. Chandra at Whole Family Wellness on April 16, 2014. AR: 2328-29.

**RESPONSE:**  Admit.

141.    Dr. Jagiello denied benefits because the "records do not support EM level of service that was billed." *Id.* at 2457-58.

**RESPONSE:**  Admit and further state that Dr. Jagiello goes on to say, "In addition, this was billed as a new patient encounter, however, the provider notes he has seem this member previously at a different practice location (I don't know the time frame). Unless it has been over three years, a new patient EM code would not be appropriate."

142.   Benefits were denied. "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed services." *Id.* at 2405-2407.

**RESPONSE:** Admit.

143.   John appealed and included a letter from Dr. Chandra which detailed the medical necessity of treating John regularly. *Id.* at 2333, 2392.

**RESPONSE:** Admit, but state that Dr. Chandra's letter is undated and does not reference any particular dates of service.

144.   Dr. Gutshall upheld the denial. He wrote "requirements for documentation of the E&M codes were not met per AMA guidelines. Also the services are investigational. The services do need to have scientific literature permitting conclusions on net health outcome, have evidence that the intervenors improve net health outcome, and the interventions need to have evidence that they are as beneficial as established alternatives. . . . " *Id.* at. 2409-13.

**RESPONSE:** Admit.

145.   Wellmark denied benefits as investigation or experimental. *Id.* 2328-29.

**RESPONSE:** Admit.

146.   Billed charges were $1,005.00. *Id.* at 2328.

**RESPONSE:** Admit.

147.   Wellmark regularly paid for services to Whole Child Wellness/ Whole Family Wellness until March 10, 2014. SAR: 22, 23, 25.

**RESPONSE:** Admit that Wellmark paid some claims from Whole Child Wellness before March 10, 2014

**March 12, 2014 – December 9, 2014: Appeal 66645**

148.   John received osteopathic manipulative treatments on March 19, March 24 and December [9] of 2014 from Dr. Blackman. *Id.* at 2597.

**RESPONSE**: Admit.

149.   Dr. Jagiello recommended denying benefits for services rendered on March 19 and March 24 of 2015 because the "[i]nformation submitted does not support any of the codes submitted for two dates of service." *Id.* at 3023.

**RESPONSE**:  Admit, but further state that in the comments section it states the records were difficult to read and did not follow the standardized SOAP format for collecting history, physical examination and treatment.

150.   Dr. Jagiello recommended denying benefits for services rendered on December 9, 2015 because "[i]nformation submitted does not support either code for this date or service." *Id.* at 3032.

**RESPONSE**:   Admit and further state that Dr. Jagiello wrote that the records only consisted of a few handwritten notes for the date of service of December 9, 2014. Dr. Jagiello stated that the note should consist of at least 2 of 3 key components.

151.   Benefits were denied for Dr. Blackman's treatments. *Id.* at 2786-87.

**RESPONSE**: Admit.

152.   John appealed and submitted a letter from Dr. Blackman detailing the medical necessity of receiving osteopathic manipulative treatments. *Id.* at 2784, 2787.

**RESPONSE**: Admit that John appealed for the dates of March 19, 2014, March 24, 2014 and December 19, 2014. Further, John appealed the dates March 12, 2015 and March 13, 2015 at AR: page 2771. AR 2787 is a letter from Dr. Blackman, but does not reference any particular dates of service. Deny that the services were medically necessary. *See* paragraph 153 below.

153.   Dr. Gutshall upheld the denial and concluded "[t]he notes are largely illegible and offer no physical exam findings and no assessment with plan of care. The provider is billing for OMT, but there is no OMT documented. The notes are not signed. Based on the records sent for review, no codes would be considered billable for the dates in question. There is insufficient documentation to support any level of billing. . .." *Id.* at 2801-15.

**RESPONSE**: Admit.

154.   Wellmark denied benefits for services rendered by Dr. Blackman on March 19, March 24 and December 9 of 2014.  *Id*. at 2597-99.

**RESPONSE**: Admit.

155.   The amount billed was "multiple." *Id*. at 2597.

**RESPONSE**:  Admit that the denial letter states "multiple" in the category of denied charges.  The charges are in the Administrative Record. See AR: pages 2772 in the amount of $675.42 for dates of service of March 12 and 13, 2015 and AR: pages 2785-86 for dates March 19, March 24 and December 9, 2014 in the amounts of $550.00 and $250.00.

156.   Wellmark regularly paid for osteopathic manipulative treatments from Dr. Blackman.  SAR: 13, 14, 15, 16, 17, 18, 19, 20, 21.

**RESPONSE**:  Admit that Wellmark has, in the past, paid for certain osteopathic manipulation treatments from Dr. Blackman.

### M.A.

**July 25, 2013: Appeal 60633**

157.   M.A. had laboratory work done at Fry Industries on July 25, 2013.  AR: 3958-59.

**RESPONSE**: Admit.

158.   Laboratory testing is a covered service under the Plan.  *Id*. at 4037, 4052.

**RESPONSE**:  Admit in part and clarify: laboratory testing is listed among the services that are "covered" under the plan, but "all covered services or supplies listed" in the relevant section of the Plan "are subject to the general contract provisions and limitations" described therein (AR 105), including the requirement that the service be medically necessary (AR 123) and not investigational or experimental, AR 124.

159.   Dr. Jagiello denied benefits.  His entire rationale provided, "[b]ased on review of laboratory services and provider's website, these tests would not be considered a standard of care in the evaluation of this child's symptoms." *Id*. at 3972-73.

**RESPONSE**:  Admit that Dr. Jagiello stated that in his rationale, but further state that above it, he states that "Minimal records were attached for M.A."

160.    The denial stated, "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed services." *Id*. at 4008.

**RESPONSE**: Admit.

161.    Gretchen appealed on behalf of M.A. and attached a letter from Dr. Gordon articulating M.A.'s health issues and the need for regular testing to help manage her pain and symptoms. *Id*. at 3964-65.

**RESPONSE**:   Admit that Dr. Gordon submitted a letter but deny to the extent that Plaintiffs are insinuating that the services were medically necessary. *See* paragraph 162 below.

162.    Dr. Gutshall upheld the denial. He wrote, "[b]ased on the information provided, the 7/25/2013 lab testing done does not contribute to improved health outcomes for the member's condition and are not as beneficial as established alternatives. As such, these tests by the Fry Laboratories are considered investigational." *Id*. at 3947-56.

**RESPONSE**:  Admit.

163.    Wellmark denied benefits as "investigational or experimental." *Id*. at 3958-59.

**RESPONSE**: Admit.

164.    Billed charges: $800.00.  *Id*.

**RESPONSE**:  Admit.

**July 23, 2013 – January 20, 2014: Appeal 60863**

165.    M.A. received osteopathic manipulative treatments from Dr. Blackman on July 23, 2013; September 2, 2013; September 11, 2013, September 26, 2013; October 9, 2013; and, January 20, 2014.  AR 3244-45.

**RESPONSE**: Admit, but clarify that the cited document is a denial letter that only states a date of service range.  Defendant further states that AR: pages 3247-3250, reflect the medical records for the dates of July 23, 2013, September 2, 2013, September 26, 2013, October 9, 2013 and January 20, 2014.  There was not a medical record provided for September 11, 2013.

166. Dr. Jagiello denied benefits for the following reasons: the "[r]ecords provided do not support EM level of service billed", "[r]ecords do not support number of body regions treated with OMT", and "ICD 9 codes submitted are not supported in the medical record". *Id*. at 3265.

**RESPONSE**: Admit.

167. The reason for the denial was, "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed services." *Id*. at 3263-3264, 3288.

**RESPONSE**: Admit.

168. Gretchen appealed on behalf of M.A. and attached a letter from Dr. Blackman detailing M.A.'s symptoms and the medical necessity of regularly performing osteopathic manipulative treatments. *Id*. at 3246, 3254.

**RESPONSE**: Admit that Gretchen submitted a general letter from Dr. Blackman with no reference to any particular date of service and deny that the services were medically necessary. *See* paragraph 169 below.

169. Dr. Gutshall upheld the denial. He wrote,

The documentation by the servicing provider does not support the level of services billed. There are no legible notes with a clear history, no legible physical exam findings and no clear/legible assessment with treatment plan and no osteopathic manipulation therapy documented. As such the medical records do not support the services billed and the medical necessity of the services are not supported. [3]

**RESPONSE**: Admit.

170. Wellmark denied benefits because the services were not medically necessary. *Id*. at 3244-45.

**RESPONSE**: Admit.

171. Billed charges were $1250.00 and $250.00. *Id*. at 3276-77.

---

[3] The Clinical Appeal Worksheet was not included in the amended administrative record.

**RESPONSE**: Admit.

172.   Wellmark regularly paid for osteopathic manipulative treatments from Dr. Blackman.  SAR: 13, 14, 15, 16, 17, 18, 19, 20, 21.

**RESPONSE**: Admit that Wellmark has, in the past, paid for certain osteopathic manipulation treatments from Dr. Blackman.

### October 16, 2013 – January 27, 2014: Appeal 61110

173.   M.A. went to Gordon Associates on October 16, 2013; November 14, 2013; December 30, 2013; and January 27, 2014.  AR: 3417-18.

**RESPONSE**: Admit.

174.   Dr. Anshul Dixit, medical director, concluded that benefits should be denied for services on January 27, 2014 because the documentation did not support the billing.  *Id.* at 3474-75.

**RESPONSE**: Admit, but further state that in the rationale section it states the records did not include the key components for an established patient, which include a comprehensive history, comprehensive examination and a medical decision making of high complexity for the time spent of 40 minutes.

175.   Dr. Jagiello, medical director, denied benefits on October 16, 2013; November 14, 2013; and December 30, 2013 because the documentation does not support the billing.  *Id.* at 3481-82, 3499.

**RESPONSE:** Admit, but further state that Dr. Jagiello wrote that the records were difficult to read and did not follow the standardized SOAP format for collecting history, physical examination and treatment.

176.   The basis for the denial was, "[b]ased on the records provided, services are denied due to lack of sufficient information to support necessity of billed services."  *Id.* at 3514, 3522, 3531, 3537, 3544.

**RESPONSE:** Admit.

177.   Gretchen appeal on behalf of M.A. and attached a letter from Dr. Gordon detailing the medical necessity of the treatments he provides. *Id*. at 3442-44.

**RESPONSE:**  Admit that Gretchen submitted a letter from Dr. Gordon but deny that the services were medically necessary.  *See* paragraph 178 below.

178.   Dr. Gutshall upheld the denial. He wrote, again:

[T]he requirements for documentation of the E&M codes were not met per AMA guidelines. Also the services are investigational.  The services do need to have scientific literature permitting conclusions on net health outcome, have evidence that the interventions improve net health outcome, and the interventions need to have evidence that they are as beneficial as established alternatives.  The visit of 10/16/13 and 1/27/14 were denied based on lack of documentation for E&M coding.  In addition, these services are also treatments that are investigational.

*Id*. at 3406-3415.

**RESPONSE:** Admit.

179.   On October 21, 2014, Wellmark denied benefits.  *Id*. at 3417-18.

**RESPONSE:** Admit.

180.   Billed charges were: $360.00, $950.00, $100.00, $600.00, 360.00. *Id*. at 3508-09.

**RESPONSE:** Admit.

181.   Wellmark previously paid benefits to Gordon Medical Associates. SAR: 1, 2, 3, 4, 7, 12, 17, 18, 19, 20, 22.

**RESPONSE:** Admit that Wellmark had covered claims for services provided by Gordon Medical Associates.  Deny that Wellmark paid benefits "to Gordon Medical Associates." The record does not support that statement.

**March 10, 2014 – June 30, 2014: Appeal 62962**

182.   M.A. went to Dr. Anderson on of Gordon Medical Associates on April 28, 2014. AR: 3717.

**RESPONSE:** Admit.

183.   M.A. went to Dr. Chandra at Whole Family Wellness Center on March 10, 2014 and June 30, 2014. *Id.* at 3728.

**RESPONSE:** Admit.

184.   Benefits were denied for the services described above. "Based on the records provided, services are denied due to lack of sufficient information to support necessity of billed services." *Id.* at 3749-56.

**RESPONSE:** Admit.

185.   Gretchen appealed on behalf of M.A. and attached a letter from Dr. Anderson detailing the medical necessity of regularly monitoring and treating M.A.  *Id.* at 3662, 3717, 3728.

**RESPONSE:** Admit and clarify. Gretchen did submit a letter form Dr. Anderson's that talks generally about his treatment of M.A. and does not specifically state any particular dates of service. Wellmark denies that the services were medically necessary. *See* 3819-3825 (explaining the lack of medical evidence and that the services were investigational and experimental).

186.   In addition, Dr. Chandra sent a letter detailing M.A.'s health condition and the need to regularly monitor and modify her treatment plan. *Id.* at 3666.

**RESPONSE:** Admit that Dr. Chandra's letter is in general nature to medical condition and does not specifically state any particular dates of service.

187.   Dr. Gutshall upheld the denial and, again, concluded that the services should be denied because:

> [T]he requirements for documentation of the E&M codes were not met per AMA guidelines. Also the services are investigational. The services do need to have scientific literature permitting conclusions on net health outcome, have evidence that the interventions improve net health outcome, and the interventions need to have evidence that they are as beneficial as established alternatives.

*Id.* at 3819-3825.

**RESPONSE:** Admit.

188.   Wellmark denied benefits.  *Id.* at 3654-3656.

RESPONSE: Admit.

189.   Billed charges were $920.00.  *Id.* at 3827.

RESPONSE: Admit.

190.   Wellmark previously paid benefits to Gordon Medical Associates. SAR: 1, 2, 3, 4, 7, 12, 17, 18, 19, 20, 22.

RESPONSE: Admit that Wellmark had covered claims for services provided by Gordon Medical Associates.  Deny that Wellmark paid benefits "to Gordon Medical Associates." The record does not support that statement.

191.   Wellmark regularly paid for services to Whole Child Wellness/ Whole Family Wellness until March 10, 2014.  *Id.* at 22, 23, 25.

RESPONSE: Admit that Wellmark paid some claims from Whole Child Wellness before March 10, 2014.

## T.A.

**May 29, 2013 – October 16, 2013: Appeal 60634**

192.   T.A. received treatment for her Lyme disease Gordon Medical Associates on May 29, 2013; October 1, 2013; and October 16, 2013.  AR: 4132.

RESPONSE:  Admit.

193.   Dr. Jagiello denied the benefits as investigational.  "The notes are sketchy and for the most part do not follow a standardized SOAP format. . . . The treatments noted are not part of conventional Western medical practices."  *Id.* at 4150.

RESPONSE: Admit.

194.   Benefits were denied "due to lack of sufficient information to support necessity of billed services."  *Id.* 4185, 4187, 4190, 4193.

RESPONSE: Admit.

195.   Gretchen appealed on behalf of T.A.  *Id*. at 4132.

**RESPONSE**: Admit.

196.   Dr. Anderson and Dr. Gordon provided letters to Wellmark detailing the medical necessity of the treatments.  *Id*. at 4133-34.

**RESPONSE**: Admit.

197.   Dr. Gutshall upheld the denial.  He concluded that the services provided did not "contribute to improved health outcomes for the member's condition and are not as beneficial as established alternatives." *Id*. at 4119-4124.

**RESPONSE**: Admit.

198.   Wellmark denied benefits for services provided on July 25, 2013, a date of service which was not subject to the appeal. *Id*. at 4126, 4132.

**RESPONSE**: Admit.

199.   Billed charges were $985.00, $240.00, $580.00, and $165.00.  *Id*. at 4177.

**RESPONSE:** Admit that the charges are listed in an Insured Summary – General with other dates of service.  Defendant further states that the charge for $985.00 relates to all three services added together and not for one specific date as shown.  The charges for $240.00 relates to October 16, 2013, $580.00 relates to October 1, 2013, and $165.00 relates to May 29, 2013. Additionally, Defendant states that the medical bills for each charge for each date of service can be found at AR 4182-4184.  AR 4185 is a claim summary showing the $985.00 amount and how it is broken down into the three dates of service.

200.   Wellmark previously paid benefits to Gordon Medical Associates. SAR: 1, 2, 3, 4, 7, 12, 17, 18, 19, 20, 22.

**RESPONSE:** Admit that Wellmark had covered claims for services provided by Gordon Medical Associates.  Deny that Wellmark paid benefits "to Gordon Medical Associates." The record does not support that statement.

**July 23, 2013 – December 23, 2013: Appeal 60864**

201.   T.A. received osteopathic manipulative treatments from Dr. Black on the following dates: July 23, 2013; August 27, 2013; September 30, 2013; October 8, 2013; October 29, 2013; November 12, 2013; December 2, 2013; and December 23, 2013.  AR: 4413-14.

**RESPONSE:**   Admit, with the clarification that the services were provided by Dr. Blackman. The medical records at AR 1606-1607.

202.   Dr. Jagiello denied benefits for services provided between July 23, 2013 and October 29, 2013 for the following reasons: the "[r]ecords provided do not support EM level of service billed", "[r]ecords do not support number of body regions treated with OMT", and "ICD 9 codes submitted are not supported in the medical record".  *Id.* at 4438-39.

**RESPONSE:**   Admit but specifically state that Dr. Jagiello denied the dates of service of July 23, 2013, August 27, 2013, September 30, 2013, October 8, 2013 and October 29, 2013.

203.   "The 12/23/13 DOS was denied by SIU for records but records were not received nor reviewed by SIU."  *Id.* at 4436-37.

**RESPONSE:**   Admit that the document is accurately quoted, but further state that Wellmark requested the records. AR 4447

204.   Dr. Jagiello's used the identical rationale in Appeal 60863.  *Id.* at 3265.

**RESPONSE:**   Admit and further state that the claims were from the same provider, for the same general time period, for the same services.

205.   In fact, Dr. Jagiello's denial in Appeal 60864 was sent on March 5, 2014 at 3:48 p.m.  Just one minute before, Dr. Jagiello sent the identical email, denying benefits in Appeal 60863 at 3:47 p.m.  *Id.* at 4438-39, 3265.

**RESPONSE:**   Admit and further state that the claims were for the same provider, for the same general time period, for the same services.

206.   Wellmark concluded "[b]ased on the records provided, services are denied due to lack of sufficient information to support necessity of billed services."  *Id.* at 4461, 4470.

**RESPONSE:** Admit.

207.    Gretchen appealed on behalf of T.A.  *Id.* at 4319, 4393, 4386, 4423, 4433.

**RESPONSE:** Admit.

208.    Dr. Blackman submitted a letter to Wellmark detailing the need for osteopathic manipulative treatments to help control symptoms associated with inflammation.  *Id.* at 4354, 4415.

**RESPONSE:**  Admit that a letter from Dr. Blackman was submitted with the appeal and that it provides a general statement concerning his treatment. Deny that the services were medically necessary. *See* paragraph 209 below.

209.    Dr. Gutshall concluded that

"The documentation by the servicing provider does not support the level of services billed.  There are no legible notes with a clear history, no legible physical exam findings and no clear/legible assessment with treatment plan and no osteopathic manipulation therapy documented.  As such the medical records do not support the services billed and the medical necessity of the services are not supported.  Also, additional medical documentation specific to the December 2013 dates of service to determine medical necessity were requested from your provider but have not been received.   The information needed to evaluate is the 12/2/2013 and 12/23/2013 office record.  Upon receipt of this information, an additional consideration of the service will be conducted…

*Id.* at 4304-4316.

**RESPONSE:**  Admit.

210.    Wellmark denied benefits for services from July 23, 2013 – December 23, 2013. *Id.* at 4413-14.

**RESPONSE:**  Admit.

211.    Billed charges were $750.00 and $1250.00.  *Id.* at 4449.

**RESPONSE:**  Admit that the charges are listed in an Insured Summary – General with other dates of service.  Defendant further states that the charge for $750.00 relates to three dates services added together and not for one specific date as shown.  The charge for $1250.00 relates to five dates services added together and not for one specific date as shown.  Additionally, Defendant states that the medical bills for each charge for each date of service can be found at AR: pages 4455-59 and 4467-69.  At AR 4441 is a claim summary showing the $1250.00 amount and how it is broke down into the five dates of service.  A part of this invoice is whited out and

the total amount was whited out and then a handwritten total was placed.  AR 4470 shows the amount of $750.00 in the claim summary and how it is broken down by each date of service.

212.    Wellmark regularly paid for osteopathic manipulative treatments from Dr. Blackman.  SAR: 13, 14, 15, 16, 17, 18, 19, 20, 21.

**RESPONSE**:   Admit that Wellmark has, in the past, paid for certain osteopathic manipulation treatments from Dr. Blackman.

**December 30, 2013 and January 27, 2014**

213.    T.A. received treatments from Dr. Chandra and Dr. Anderson on December 30, 2013 and January 26, 2014.  AR: 4593-94.

**RESPONSE:** Admit.

214.    Dr. Jagiello denied benefits because the records submitted did not support the services that were billed.  *Id.* at 67.   However, the attached dates of service that Dr. Jagiello reviewed was November 14, 2013, a date not subject to the appeal.  *Id.* at 4639-40.

**RESPONSE:**  Admit that the document Plaintiffs refer to as a review by Dr. Jagiello of services performed on November 14, 2013.

215.    Dr. Anshul Dixit concluded that benefits should be denied for January 27, 2014 because the diagnosis and treatments provided do not correspond to generally accepted standards of medical practice and the records do not support the level of services billed.  *Id.* at 4647-48.

**RESPONSE:** Admit, but further state that in the rationale section it states the records did not include the key components for an established patient, which include a comprehensive history, comprehensive examination and a medical decision making of high complexity for the time spent of 40 minutes.

216.    At the exact same time that Dr. Dixit sent the email denying benefits in this appeal, he sent another email denying benefits in Appeal 61110.  Both emails are time stamped March 24, 2014 at 9:28 a.m.  Both emails are nearly identical in content.  *Id.* at 4647-48, 3474-75.

**RESPONSE:** Admit and further state that both claims were for similar services from Gordon Medical Associates.

217.    Benefits were denied for the services on November 14, 2014 "[b]ased on the records provided, services are denied due to lack of sufficient information to support necessity of billed services." *Id*. at 4678, 4686.

**RESPONSE:** Admit.

218.    Gretchen appealed on behalf of T.A for visits to Dr. Anderson and Dr. Chandra on December 30, 2013 and January 27, 2014. *Id*. at 4620.

**RESPONSE:** Admit.

219.    Dr. Anderson provided a letter detailing the medically necessity of regularly monitoring and treating T.A.'s symptoms associated with her Lyme disease. *Id*. at 4621.

**RESPONSE:** Admit that Dr. Anderson submitted a letter that generally describing the medial conditions. Deny that the services are medically necessary. *See* paragraph 220 below.

220.    Dr. Gutshall concluded that the services should be denied because the services were investigational. "The services do need to have scientific literature permitting conclusions on net health outcome, have evidence that the interventions improve net health outcome, and the interventions need to have evidence that they are as beneficial as established alternatives.   In addition, the requirements for documentation of the E&M codes were not met per AMA guidelines." *Id*. at 4575-4583.

**RESPONSE:** Admit.

221.    Wellmark denied benefits for the services provided between November 14, 2013 and January 27, 2014. *Id*. at 4593.

**RESPONSE:** Admit but clarify that Plaintiffs did not appeal the denial of the November 14, 2013 date of service.

222.    Billed charges were $650.00, $950.00, and $360.00. *Id*. at 4664.

**RESPONSE:** Admit that the charges are listed in an Insured Summary – General with other dates of service. Defendant further states that the charge for $600.00 relates to two dates services added together and not for one specific date as shown. The charge for $950.00 relates to a date for which no invoice was provided. Additionally, Defendant states that the medical bills for each charge for each date of service can be found at AR 4668-69 and 4684. At AR 4678 is a claim summary showing the $950.00 amount. The amounts of $950.00 and $240.00 pertain to the date of service for November 14, 2013, which was not appealed.

223.    Wellmark previously paid benefits to Gordon Medical Associates. SAR: 1, 2, 3, 4, 7, 12, 17, 18, 19, 20, 22.

**RESPONSE:** Admit that Wellmark had covered claims for services provided by Gordon Medical Associates. Deny that Wellmark paid benefits "to Gordon Medical Associates" The record does not support that statement.

224.    Wellmark regularly paid for services to Whole Child Wellness/ Whole Family Wellness until March 10, 2014. *Id*. at 22, 23, 25.

**RESPONSE:** Admit that Wellmark paid some claims from Whole Child Wellness before March 10, 2014.

**April 28, 2014: Appeal 62963**

225.    T.A. received treatment from Dr. Anderson at Gordon Medical Clinic on April 28, 2014. AR: 4995-97.

**RESPONSE:** Admit.

226.    "Per SIU they have no documentation for this denial." *Id*. at 68.

**RESPONSE:** Deny as the page cited does contain that reference, though it appears that Plaintiffs are referring to AR 5059.

227.    In the claim notes, it provides: "per medical director, the claim listed below that was denied X668 needs to be adjusted to indicate the services were investigational – E617. . . ." The claim note was dated February 27, 2015. *Id*. at 37.

**RESPONSE:** Admit that this statement appears at AR 5028.

228.   Wellmark's basis for denial was that the service was experimental or investigational. *Id.* at 5019-21, 5054-55.

**RESPONSE:**   Admit but clarify that that the explanation at AR 5054 is that the claim was also denied for lack of sufficient information to support necessity of billed services.

229.   Gretchen appealed on behalf of T.A. *Id.* at 5010, 5057.

**RESPONSE:**   Admit.

230.   Dr. Anderson sent a letter to Wellmark and detailed the medical necessity of treating T.A.'s porphyria which can cause kidney failure and liver damage. *Id.* at 4998, 5002, 5013, 5040, 5052.

**RESPONSE:**   Admit that Dr. Anderson submitted the letter, which was identical to his June 8, 2015 letter, but deny that the services were medically necessary. *See* paragraph 231 below.

231.   Dr. Gutshall, concluded "the requirements for documentation of the E&M procedure codes were not met per AMA guidelines. Also the services are investigational. The services do need to have scientific literature permitting conclusions on net health outcome, have evidence that the intervenors improve net health outcome, and the interventions need to have evidence that they are as beneficial as established alternatives. . . . " *Id.* at 5059-64.

**RESPONSE:**   Admit.

232.   Wellmark denied benefits as being investigational or experimental on July 2, 2015 and February 24, 2015. *Id.* at 4955, 5034.

**RESPONSE:**   Admit.

233.   Billed charges were $240.00. *Id.* at 5023, 5066.

**RESPONSE:**   Admit.

234.   Wellmark previously paid benefits to Gordon Medical Associates. SAR:  1, 2, 3, 4, 7, 12, 17, 18, 19, 20, 22.

**RESPONSE:** Admit that Wellmark had covered claims for services provided by Gordon Medical Associates.   Deny that Wellmark paid benefits "to Gordon Medical Associates." The record does not support that statement.

**June 30, 2014: Appeal 63536**

235.   T.A. went to Dr. Chandra at Whole Family Wellness on June 30, 2014.  AR: 5322.

**RESPONSE:** Admit.

236.   Benefits were denied for the services described above because "[b]ased on the records provided, services are denied due to lack of sufficient information to support necessity of billed services."  *Id.* at 5409-5411.

**RESPONSE:** Admit.

237.   Gretchen appealed on behalf of T.A.  *Id.* at 5407.

**RESPONSE:** Admit.

238.   Dr. Chandra sent a letter to Wellmark detailing the medical necessity of regularly monitoring and treating T.A..  *Id.* at 5326.

**RESPONSE:** Admit that Dr. Chandra sent the letter but deny that the services were medically necessary. *See* paragraph 240 below.

239.   Senior Investigator, Michelle Emmons, when asked to provide documentation related to the denial wrote, "Nothing to provide."  *Id.* at 5509.

**RESPONSE:** Admit.

240.   Dr. Gutshall concluded "the requirements for documentation of the E&M procedure codes were not met per AMA guidelines.  Also the services are investigational.  The services do need to have scientific literature permitting conclusions on net health outcome, have evidence that the intervenors improve net health outcome, and the interventions need to have evidence that they are as beneficial as established alternatives. . . . "  *Id.* at 5413-5418.

**RESPONSE:** Admit.

241.   Wellmark denied benefits. *Id*. at 5322.

**RESPONSE:** Admit.

242.   Billed charges were $320.00. *Id*. at 5498.

**RESPONSE:**  Admit.

243.   Wellmark regularly paid for services to Whole Child Wellness/ Whole Family Wellness until March 10, 2014.  SAR: 22, 23, 25.

**RESPONSE:**  Admit that Wellmark paid some claims from Whole Child Wellness before March 10, 2014

**November 14, 2013 – December 30, 2013**

244.   T.A. went to Dr. Anderson at Gordon Medical Associates from November 14, 2013 to December 30, 2013.  AR: 4796-97.

**RESPONSE:** Admit. The medical records are at AR 4802-4810.

245.   On March 28, 2014, Dr. Jagiello decided to deny benefits on November 14, 2013 because the records submitted did not support the services that were billed. *Id*. at 4870-71.

**RESPONSE:** Admit, but further state that Dr. Jagiello also noted that the records did not follow the standardized SOAP format for collecting history, physical examination and treatment and there is no physical examination identified in the record.

246.   Oddly, there was an email from Dr. Anshul recommending denying services on January 27, 2014, despite that date not being appealed. *Id*. at 4878.

**RESPONSE:** Admit that Dr. Anshul denied the service date of January 27, 2014. Wellmark denies the characterization ("oddly") and notes that the appeal for the initial denial of these services was not submitted until April 20, 2015, several months after Dr. Anshul denied the claim. AR 4813.

247.   In an email from the "Senior Special Inquiries Specialist" to the "Senior investigator" it was written, "I have rec'd another attorney inquiry for the Hillenbrand/Arlt family – SYH020AD0677.  I was advised all claims go thru SUI up front so that [is] why I am

asking if SIU has anything for this claim. There is not an SIU denial reason." The Senior Investigator responded, "Since these are not SIU denial reasons we do not have anything." *Id.* at 4885.

**RESPONSE:** Admit.

248.   On October 22, 2014, benefits were denied as investigational or experimental. *Id.* at 4835-4839.

**RESPONSE:** Admit that Wellmark denied benefits for November 14, 2013, December 30, 2013 and January 27, 2014 based upon the conclusion that the services were considered investigational or experimental. AR 4838-39.

249.   Gretchen appealed on behalf of T.A. *Id.* at 4813, 4830.

**RESPONSE:** Admit that Gretchen only appealed the dates of November 14, 2013 and December 30, 2013. AR 4813-4830.

250.   Dr. Anderson sent a letter to Wellmark detailing the medial [sic] necessity of regularly monitoring and treating T.A. for her porphyria. *Id.* at 4832.

**RESPONSE:** Admit that Dr. Anderson wrote a letter about T.A.'s general health problems and the treatment but deny that the services were medically necessary. *See* paragraph 251 below regarding lack of documentation.

251.   Dr. Barbara A. Muller upheld the denial based on the services being investigational. "In addition, the requirements for documentation of the E&M codes were not met per AMA guidelines." *Id.* at 4841-4848.

**RESPONSE:** Admit.

252.   Wellmark denied benefits. *Id.* at 4796-97.

**RESPONSE:** Admit.

253.   Billed charges were $600.00. *Id.* at 4850.

**RESPOSNE:** Admit.

254.   Wellmark previously paid benefits to Gordon Medical Associates. SAR: 1, 2, 3, 4, 7, 12, 17, 18, 19, 20, 22.

**RESPOSNE:** Admit that Wellmark had covered claims for services provided by Gordon Medical Associates.  Deny that Wellmark paid benefits "to Gordon Medical Associates" The record does not support that statement.

### September 24, 2015: Appeal 70429

255.   T.A. went to Dr. Chandra at Whole Family Wellness Center on September 24, 2015. *Id.* at 6575-77.

**RESPOSNE:** Admit.

256.   Wellmark denied benefits for the reason, "Additional medical information is required to process this claim, and has been requested from your provider.  This claim denial may be reconsidered once we have received the requested information.  Please refer to your benefits document for information on claims filing requirements." *Id.* at 6591-

**RESPONSE:** Admit, although the quoted language is on AR 6592.

257.   Gretchen appealed on behalf of T.A. *Id.* at 6582-93.

**RESPONSE:** Admit.

258.   Dr. Chandra sent a letter to Wellmark detailing the medical necessity of the services provide. *Id.* at 6578, 6583.

**RESPONSE:** Admit that Dr. Chandra submitted letter that generally discussed medical treatment for T.A. but deny that the services were medically necessary. *See* paragraph 259 below.

259.   Dr. Gutshall upheld the denial and concluded, "The information submitted with your appeal does not provide documentation to support the elements for the level of service . . ." *Id.* at 6595-98.

**RESPONSE:** Admit.

260.   Wellmark denied benefits as not medically necessary. *Id.* at 6575-77.

**RESPONSE:** Admit.

261.   Billed charges were $600.00.  *Id.* at 6601.

**RESPONSE:** Admit.

262.   Wellmark regularly paid for services to Whole Child Wellness/ Whole Family Wellness until March 10, 2014.  SAR: 22, 23, 25.

   **RESPONSE:** Admit that Wellmark paid some claims from Whole Child Wellness before March 10, 2014.

       Respectfully submitted,

       By: */s/ Ryan G. Koopmans*
       Ryan G. Koopmans
       Nyemaster Goode, P.C.
       700 Walnut Street, Ste. 1600
       Des Moines, IA 50309
       (515) 283-3173
       rkoopmans@nyemater.com

       Barbara Anderson Lewis
       Lynn, Jackson, Shultz & Lebrun, P.C.
       PO Box 8250
       Rapid City, SD 57709-8250
       605-342-2592
       blewis@lynnjackson.com

       ATTORNEYS FOR DEFENDANT

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 15, 2016, I sent to:

Mr. Terry G. Westergaard
Mr. Daniel F. Duffy
Ms. Kelsey B. Parker
Bangs, McCullen, Butler, Foye & Simmons
333 West Blvd., Suite 400
PO Box 2670
Rapid City, SD 57709-2670
twestergaard@bangsmccullen.com
dduffy@bangsmccullen.com
kparker@bangsmccullen.com

by Notice of Electronic Filing generated by the CM/ECF system, a true and correct copy of the **Wellmark's Response to Plaintiffs' Statement of Facts in Support of Summary and Wellmark's Additional Statement of Facts** relative to the above-entitled matter.

_/s/_     _Barbara Anderson Lewis_____
Barbara Anderson Lewis