UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| GRETCHEN HILLENBRAND and JOHN ARLT, INDIVIDUALLY and on behalf of M.A. AND T.A., as natural guardians,<br><br>Plaintiff,<br><br>vs.<br><br>WELLMARK OF SOUTH DAKOTA, INC.,<br><br>Defendant. | Civ. No. 16-5007-KES<br><br>**Wellmark's Brief in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Wellmark's Motion for Summary Judgment** |

**Introduction**

This is an appeal of the denial of several claims for medical benefits under the Employee Retirement Income Security Act ("ERISA"). Plaintiffs are a family of four—mother, father, and two children—who claim multiple chronic medical issues (some of which are similar). All family members receive a significant amount of treatment from the same providers: Dr. Wayne Anderson, Dr. Eric Gordon, Dr. Elliot Blackman, and Dr. Suruchi Chandra. Plt. Br. 2-3. Each of these providers treat Plaintiffs' various conditions with "holistic," "naturopathic," or "integrative" treatment that, depending on the provider, involves homeopathy advice and supplements, osteopathic manipulation, or other alternative approaches. Plt. Br. 2-3.

After review, Wellmark denied various claims for holistic services based upon one or more of the following reasons: (1) the services did not fit the standard for medical necessity (which includes scientific credibility); (2) the services were experimental and investigational; or (3) the services were not supported by medical documentation or (if documentation was provided) the documentation insufficient, incomplete, or inconsistent with accepted coding guidelines.

On appeal, Plaintiffs claim that Wellmark should have paid their claims. The evidence offered is slight; indeed, Plaintiffs' arguments rest almost entirely on a series of general, one-page letters written by their providers. That is not enough for Plaintiffs to overcome the standard of review. As Plaintiffs concede, this case is reviewed under an abuse of discretion standard, so Wellmark's decision must be upheld so long as it is supported by substantial evidence. Under any standard, Wellmark's decisions should be upheld; under that deferential standard, the analysis is even more straightforward.

Plaintiffs also suggest that because Wellmark paid similar claims in the past, it must continue to do so into the future. That argument is meritless. Wellmark, like other health insurance companies, receives millions of insurance claims per year. Wellmark cannot review the medical records for each and every claim, so the fact that it has approved some of Plaintiffs' holistic treatments does not mean that it must continue to do so forever. Indeed, Plaintiffs cite no ERISA authority for that proposition.

Wellmark's decision should therefore be upheld and the Court should grant judgment in Wellmark's favor.

**Relevant Plan Terms**

As Plaintiffs concede, this is an ERISA-governed health plan. Most of the terms of the Plan are contained in the Benefits Certificate, a copy of which appears multiple times in the Administrative Record, including at AR 89-181. In general, the relevant provisions and policies of the Plan are those that deal with medical necessity, investigational and experimental services, and claims submission procedures.

Section 3 of the Benefit Certificate lists services that are "covered," but that section also provides that "all covered services or supplies listed in this section are subject to the general contract provisions and limitations described in the manual," which means that even if a service

is listed in Section 3, a claim for that service will be denied if the service is not medically necessary, if the service is experimental or investigational, or if the documentation for that service is not sufficient to support such determinations. *See* AR 123, 124, 155-56, 223.

A service is medically necessary if, among other things, it is supported by "credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community." AR 123. The services must also be "clinically appropriate in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease." AR 123. The Plan states that "Wellmark determines whether a service, supply, device, or drug is medically necessary." AR 123.

A service is considered investigational or experimental if "it has progressed to limited human application but has not achieved recognition as being proven effective in clinical medicine." AR 124. The "final decision" as to whether a service is experimental or investigational "remains at the discretion of [a Wellmark] Medical Director." AR 124.

To determine whether a service is medically necessary or investigational, Wellmark must often review medical documentation. That is where the claims process comes in. If a member (i.e., insured) sees an "in-network" or "participating" provider (meaning a provider that has a contractual arrangement with Wellmark or another Blue Cross and Blue Shield licensee), the provider handles claim processing and the patient has certain protections in terms of having to pay for services that are not medically necessary or are investigational. *See* AR 140 (explaining the implications of nonparticipating providers).

That is not the case for "out-of-network" or "nonparticipating providers." None of the providers seen by Plaintiffs whose services are at issue are network or participating providers. When a member visits a non-participating provider, the member is responsible for submitting the

claim. AR 155. That requires the member to follow the procedures listed at AR 156, and in some cases it means that Wellmark will need to review further documentation to determine whether the service is covered (i.e., whether it is medically necessary and not investigational). AR 156.

To make that coverage determination, each date of service "must be recorded in the patient's office documentation" and the "patient's records should contain the following information:"

- Patient history
- Chief complaint
- Physical examination findings
- Quantitative measurement of physical limitations and/or extent of injury
- Signs and symptoms
- Objective findings
- Impressions
- Diagnosis
- Plan of action/treatment
- Improvement, arrest/retardation of a patient's condition

AR 223.

For osteopathic manipulative treatment, medical records are of the upmost importance. The documentation must "clearly support[] the need for a more detailed in-depth examination and evaluation" and it "should also provide data regarding the present objective findings compared to the last formal examination performed." AR 222.

**Argument**

Plaintiffs are appealing the denial of dozens of claims for holistic treatment that they received from the four non-participating providers: Drs. Anderson, Gordon, Blackman, and Chandra.  Those claims have amounted to 31 appeals that have generated a 6,775-page

4

administrative record,[1] yet Plaintiffs barely discuss the treatments they received and, other than a one-page letters from each of the four providers, they cite the Court to no evidence in support of their appeal. The reason, of course, is that Plaintiffs have nothing to cite to, and that is the heart of the matter: There is an absence of meaningful documentation about the care provided.

Consider one the claims for Dr. Blackman's osteopathic treatment of Gretchen Hillenbrand. The records that were submitted to Wellmark are largely illegible, they contained nothing to denote the number of body regions treated with osteopathic manipulation, and "none of them have a clear physical exam documented" or "a legible assessment with a plan of care." AR 187-88. (*See* AR 203-07 for examples.) As the medical reviewer noted:

> [T]he treatment is not provided in accordance with generally excepted standards of medical practice. Standards of medical practice support a clear history of present illness, appropriate physical exam findings, and a clear rationale in the assessment and plan to support the need for treatment. In this case, there is no clear history of present illness, no clear physical exam findings, and no clearly defined treatment plan. In addition, the notes are not signed. The treatment does not meet accepted standards of medical practice. The notes do not support E/M coding or osteopathic manipulative treatment (OMT) coding due to a lack of any clear history of present illness (HPI), or rationale to support the need for the services.

AR 189.

The only other evidence that Gretchen Hillenbrand submitted in this instance was a letter from Dr. Blackman stating that she has chronic inflammation from past Lyme disease. AR 231; *see also* Plt SOF ¶ 31 and Wellmark's Response.   There was no explanation of how the (somewhat undefined) treatments were medically necessary under the Plan, meaning that there was no explanation in the record as to how these alternative treatments for Gretchen's ailments

---

[1] That may seem large, but in the context of Plaintiffs claim history, it is not. Since 2011, the four Plaintiffs have submitted 1,702 claims for medical benefits; the large majority of which have paid by Wellmark. *See* Supplemental Administrative Record 1-42, Doc. No. 47 (listing Plaintiffs' claims history).

are supported by "scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community." AR 123 (definition of medical necessity under the Plan).

This same situation plays out again and again in the appeal files. Plaintiffs submit the same claims, which are either not supported by proper documentation or (when the documentation is there) are shown to be investigatory or not medically necessary. At no point do Plaintiffs submit any additional information, such as scientific evidence or even reference peer-reviewed medical literature. Instead, the only response is the same conclusory letters authored by the provider.

Gretchen and her family now appeal the denial of these claims, but they fail to address the investigation or experimental nature of the treatments or show that Wellmark was wrong in its analysis of medical necessity. By definition, that means Plaintiffs' claims fall short, because the Plan gives Wellmark discretion to apply its terms, to determine medical necessity, and to determine whether a service is investigational.[2] As a result, Wellmark's decision must be upheld so long as it is supported by substantial evidence—which is "more than a scintilla but less than a preponderance." *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 583 (8th Cir.2008). That is a "highly differential standard"—and it is meant to be. *Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) In enacting ERISA, "Congress sought to create a system that is not so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [employee] plans in the first place." *Conkright v. Frommert*, 559 U.S. 506, 130 S. Ct. 1640, 1649 (2010) (internal quotations and alterations omitted). If every claim for medical benefits were litigated *de novo*, premiums would be immensely more expensive and employers

---

[2] *See* AR 123 (medical necessity); AR 124 (investigational or experimental); AR 169 (general discretionary language).

would likely forgo health plans altogether.  As a result, the standard is intentionally designed so that it "reflects the fact that courts are hesitant to interfere with the administration of an ERISA plan." *Khoury*, 615 F.3d at 953.

In this case, Plaintiffs have given the Court no evidentiary justification to interfere with and overturn Wellmark's decision.  Plaintiffs do make several arguments, none of which really relate to the evidence.  We respond to those below.

## I.     The initial decision is not the focal point of the Court's review.

Plaintiffs' first argument is that Wellmark's initial denial decisions were often "cut and paste" and thus they argue Wellmark's claims decisions are not supported by substantial evidence. Plaintiffs also attempt to make issue of the fact that, in some cases, the medical director sent an internal email of his decision in one claim closely on the heels of emailing his decision regarding another claim.  Plt. Br. 9.  On both counts—legal and factual—Plaintiffs are wrong.

From a legal perspective, Plaintiffs are focused on the wrong stage of the claims process. When courts review a decision to deny benefits under ERISA, it "will review only the final claims decision, and not the initial, often succinct denial letters, in order to ensure the development of a complete record." *Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) (internal quotation and citations omitted).  So whatever Plaintiffs might think of the reasoning in Wellmark's initial decision, it is legally irrelevant.

Even so, Plaintiffs are wrong from a factual standpoint. "It seems unlikely, or impossible," Plaintiffs assert, "that a medical director could review multiple medical records for different services, review separate files, and draft an informed decision in *mere seconds*." Plt. Br. 9 (emphasis in original).  We agree; it is impossible, but it is also illogical to think that the medical directors failed to review the claims simply because he submitted his decisions one right

after another via email. As the Court can see from the voluminous records, many of these claims are similar if not identical. It would only be natural that Dr. Jagiello (a Wellmark medical director) would review and analyze the claims *together* and that he would submit his findings at or near the same time.

In any event, the Court does not review the initial decisions and thus the argument is legally irrelevant. *Khoury*, 615 F.3d at 952.

## II.   Wellmark's final decisions were similar or identical because the claims were similar or identical.

Next, Plaintiffs argue that the final decisions by Dr. Gutshall[3] were also "rubber-stamp decisions," which, according to Plaintiffs, means that they were the same or identical.

There is a reason for that: Plaintiffs' claims were the same or identical, so, of course, the reasons for denial would be too. Plaintiffs keep submitting the same claims for the same or similar treatment from the same providers based upon the same (usually deficient) documentation.

And that is really one of the main problems with Plaintiffs entire case. Wellmark kept telling them—over and over—that their medical documentation was insufficient, that they had not shown that the holistic medical services were medically necessary to treat their particular "chronic" ailments, or that the services were otherwise investigational. *See* Plt. Br. 10 (citing Wellmark's rationale). In response, Plaintiffs sent the same letters from the same physicians that made the same general statements. *See* AR 231, 441, 645, 803, 1464, 1620, 1978, 1799, 2158, 2787 (2773), 2333, 3965, 3246, 3444, 3662, 4133-34, 4318, 4621, 4832, 5052, 5326, 5816, 6187,

---

[3] Plaintiffs state that Dr. Gutshall is with Medical Review Institute of America, Inc., an external review. That is not correct; he is Wellmark's Chief Medical Officer. *See* https://www.wellmark.com/about/company-information/board. He was, however, reviewing the external review, among the other records.

6404. In other words, Plaintiffs kept submitting the same deficient claims and kept submitting the same letters in support of those claims, and thus Wellmark kept gave them the same answer.

Plaintiffs also claim that Wellmark "rarely" requested additional documents. That is not true; there are numerous examples in the record where Wellmark did just that. *See* AR 1277, 1645, 6191, 6195. But that also assumes the onus was on Wellmark; it is not. If Plaintiffs wanted to challenge Wellmark's denial, and if Plaintiffs believed there were additional documents that would help the cause, Plaintiffs could have and should have submitted those documents without prompting from Wellmark. That is what an appeal is for, after all.

Indeed, the Plan states that when appealing, "you must submit *all relevant information* with your appeal, including the reason for your appeal" and "written comments, documents, *or other information* in support of your appeal." AR 612 (emphasis added). Another section of the Plan explains: "Upon receiving an Explanation of Benefits (EOB) indicating a denial of benefits for failure to request prior approval, you will have the opportunity to appeal (see the Appeals section) and provide us with medical information for our consideration in determining whether the services were medically necessary and a benefit under this medical benefits plan." AR 583.

Plaintiffs cannot meet their burden by merely complaining that Wellmark did not do what Plaintiffs were tasked with doing. Instead, Plaintiffs must point to evidence *in the record* to show that Wellmark's decision was *not* supported by substantial evidence. Plaintiffs have not done that, and thus their appeal fails.

**III. The fact that the Plan lists laboratory services and osteopathic manipulation as covered services does not mean that those services will always be medically necessary and not investigational.**

Plaintiffs argue on pages 11-17 of their brief that Wellmark's claim denials were "not in accordance with the plain language of the plan" because the Coverage Certificate lists "musculoskeletal treatments" and "laboratory services" as "covered" under Section 3 of the Plan.

Plaintiffs are right, in that those services are listed as "covered" in Section 3.  But Plaintiffs ignore the introductory statements of that section, which state *expressly* that coverage for those services is subject to the other terms of the Plan (AR 105), which includes the requirement that they be medically necessary, that the services are not investigational, and that the medical documentation supports those conclusions. *See* AR 123, 124, 155-56, 223.  So Wellmark's denials were in perfect alignment with the Plan's terms.

The laboratory tests are another good example of the type of claims that Wellmark denied and its reasons for doing so.  Relying on an internal medical director (AR 48), an external review from a physician certified by the American Board of Internal Medicine in General Internal Medicine and Infectious Disease (AR 9-11, 32), and another medical director review (AR 6-7), Wellmark told Plaintiff that the services were not medically necessary (AR 31), which means that the treatment was not supported by "credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community." AR 124. Specifically, Wellmark told Plaintiffs (through a letter to their attorney) that "there is no convincing biological evidence for the existence of symptomatic chronic B burgorferi infection among patients after the receipt of the recommended treatment regimes for Lyme disease." AR 31. On appeal, Plaintiffs fail to show how that explanation is insufficient, and they fail to cite to any evidence that contradicts it.  They only point to the generic letter form Dr. Anderson that makes general statements concerning medical necessity.  AR 15. On *de novo* review, that would not be enough for Plaintiffs to meet their burden.  It is certainly not enough under the discretionary standard.

The same is true for the osteopathic manipulation claims. Yes, musculoskeletal treatments are covered, but only if they are medically necessary and not investigational *for the*

*treatment of Plaintiffs' ailments.* The records that Plaintiffs submitted for their osteopathic manipulation claim are barely legible and tell Wellmark almost nothing. AR 185-98 (commenting on the records); AR 203-207 (the records). They certainly do not establish that Wellmark abused its discretion.

In short, Plaintiffs' claim that Wellmark has not accurately applied the terms of the Plan is without merit. The services do not comply with the Plan's terms, and thus the services are not covered.

## IV.    The fact that Wellmark paid some claims for the holistic providers does not estop Wellmark from denying later claims based upon a review of the medical records.

Finally, Plaintiffs contend that Wellmark should be forced to cover their claims for holistic services because Wellmark has approved similar claims in the past. That is not a legally sound argument, and it does not recognize the realities of claim processing. Because of the sheer amount of claims that Wellmark receives each day, it would be impossible to review every medical record associated with every claim. As a result, some claims may get paid when they shouldn't. It happens, and it may have happened here. That does not mean, however, that Wellmark is obligated to pay the next claim and the claim after that. There is no legal authority for this kind of estoppel argument, which is why Plaintiffs cite none. Indeed, imagine if that were the rule: A health plan might be financially crippled simply because one claim was wrongly paid to one person and thus all similar claims afterward must be paid. The argument should be rejected.

### Conclusion

Plaintiffs have failed to show that show that Wellmark's decisions are not supported by substantial evidence. For that reason, the Court should enter judgment in Wellmark's favor.

Respectfully submitted,

By: */s/ Ryan G. Koopmans*
Ryan G. Koopmans
Nyemaster Goode, P.C.
700 Walnut Street, Ste. 1600
Des Moines, IA 50309
(515) 283-3173
rkoopmans@nyemater.com

Barbara Anderson Lewis
Lynn, Jackson, Shultz & Lebrun, P.C.
PO Box 8250
Rapid City, SD 57709-8250
605-342-2592
blewis@lynnjackson.com

ATTORNEYS FOR DEFENDANTS

12

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 15, 2016, I sent to:

Mr. Terry G. Westergaard
Mr. Daniel F. Duffy
Ms. Kelsey B. Parker
Bangs, McCullen, Butler, Foye & Simmons
333 West Blvd., Suite 400
PO Box 2670
Rapid City, SD 57709-2670
twestergaard@bangsmccullen.com
dduffy@bangsmccullen.com
kparker@bangsmccullen.com

by Notice of Electronic Filing generated by the CM/ECF system, a true and correct copy of the **Wellmark's Brief in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Wellmark's Motion for Summary Judgment** relative to the above-entitled matter.

/s/     *Barbara Anderson Lewis*
Barbara Anderson Lewis